[Crim. No. 2087.   Third Dist.   Oct. 4, 1948.]

In re FRED STONE, on Habeas Corpus.

Charles Kasch and Leo M. Cook for Petitioner.

Fred N. Howser, Attorney General, and Doris H. Maier, Deputy Attorney General, for Respondent.

ADAMS, P. J.—On July 12, 1940, an information was filed in the Superior Court of Shasta County, charging petitioner with a violation of section 288 of the Penal Code in that he had committed a lewd and lascivious act upon a girl 10 years of age. Stone pleaded not guilty, and on August 20, 1940, his attorney filed a petition under sections 5500 and 5501 of the Welfare and Institutions Code seeking to have him declared a sexual psychopath. After a hearing the court adjudged him to be such sexual psychopath, and on August 22d ordered that he be committed to the Mendocino State Hospital, and that proceedings on the criminal charge be suspended.

On December 12, 1941, Dr. Rapaport, the medical superintendent of said state hospital, certified to the district attorney of Shasta County, by letter, that they had given Stone all the treatment possible, and while his physical condition had improved his mental attitude continued to be such that he would not, in their opinion, be improved by further care and treatment. He stated that he believed Stone to be so sexually ill and mentally deranged that, without supervision, treatment, care or restraint he would be dangerous to himself or to other persons, and to society as a whole; but he requested that the sheriff be directed to call for and return Stone to the superior court for further disposition pursuant to section 5502.5 of the Welfare and Institutions Code.

On December 12, 1941, the superior court issued an order to the sheriff to bring Stone into court for further proceedings, and on December 16, 1941, this was done. The court then announced that it would have to proceed against defendant on the criminal charge, an attorney was appointed to represent him and the matter was continued until December 30th to be set for trial.

On that date defendant appeared with his counsel, Mr. Shadwell, but the court announced that it would proceed further on the hearing under the sexual psychopath statute, the prosecution taking the position that the public interest

and the ends of justice would best be served by continuing to hold the commitment proceeding in force, and the criminal proceedings in suspension, and to confine the psychopath in an institution *so long as he was a menace to the health and safety of others*. The district attorney further stated that precautions had not been taken to preserve the evidence on the criminal case and that the time element would make it difficult to present it. He asked that the court recommit Stone to the Mendocino State Hospital "to be confined until such time as he is no longer a menace to the health and safety of the public."

Counsel for Stone objected to such course and urged that while the court originally had jurisdiction to commit the accused to the state hospital, after the superintendent of the hospital had certified that he would not benefit from further treatment he should be tried on the original charge; and exception was taken to any other proceeding.

The court, however, stated that it would proceed as in continuation of the former hearing, and consider all the evidence that had been taken previously; and the original record made at said hearing was introduced in evidence over the objection of Stone's counsel.

Stone then took the witness stand, testified that he was 52 years of age, married and the father of a girl 8 years old. He was questioned about the offense with which he was charged and denied it, saying, also, that he had lost all sexual desire. He also stated that in preference to going back to the hospital he would go to San Quentin; and his counsel requested that they proceed with the criminal proceeding.

The court, however, readjudged Stone to be a sexual psychopath and ordered that he be returned to the Mendocino State Hospital to be held "as required by law."

On April 29, 1942, Dr. Toller, then the superintendent of the said hospital in the absence of Dr. Rapaport who was in the Navy, advised the court that in his opinion Stone was no longer a menace to the health and safety of others, and that unless within 30 days the court should order his return for further action on the criminal charge, he would be paroled for a period of not less than five years.

On April 9, 1943, the trial court was advised by Dr. Rapaport that Stone had violated his parole and that his return to the state hospital was desired; and the court issued an order directing the sheriff to take him into custody and deliver him there.

On December 10, 1945, Dr. Rapaport again certified to the trial court that Stone had not recovered from his sexual pychopathy and would not be benefited by further care and treatment in the said institution; and on December 17, 1945, the court issued an order to return Stone to the court "to answer the criminal proceedings against him, which were suspended upon his commitment as a sexual psychopath," and the sheriff was ordered to detain him in the county jail upon said criminal charge, subject to the bail originally set.

On December 26, 1945, Stone again appeared in court, this time without counsel, and was questioned by the court about an alleged offense committed while on parole. He was also further questioned about the offense contained in the original charge and other matters. He stated that he still wanted his plea of not guilty to stand, and asked for a jury trial. The court then set the case for trial on February 19, 1946. However, on February 13, 1946, said court, without further hearing, issued an order again suspending the criminal proceedings and recommitting Stone to the Mendocino State Hospital. Said judge's order recited that the district attorney had reported to him that it was "impractical to try the case because the witnesses desired and necessary have scattered and cannot now be obtained to testify," and that the minor girl's memory of the facts surrounding the alleged offense had weakened because of the lapse of time.

On July 7, 1948, petitioner, relying upon the facts above stated, filed in this court his application for a writ of habeas corpus, contending that his present detention in the Mendocino State Hospital is illegal in view of the fact that the medical superintendent of said hospital has twice certified to the superior court that, though petitioner has not recovered from his sexual psychopathy, he will not be further benefited by further care and treatment in said hospital; that said medical superintendent returned him to the superior court "for further disposition of his case" under section 5502.5 of the Welfare and Institutions Code, and petitioner has demanded, in said superior court, that he be tried on the criminal charge therein, but that said court has refused to proceed with said trial and has recommitted him to the said hospital without any new or additional charge filed therein authorizing a further adjudication that he is a sexual psychopath, and without any finding that he will benefit from further hospitalization.

Since there has heretofore been no adjudication by an appellate court on the construction to be put upon the applicable portions of section 5502.5, *supra,* we granted the writ.

■ Section 5500 of the Welfare and Institutions Code defines a sexual psychopath. Sections 5501 and 5502 provide that when any person is charged with a crime, and, either before or after adjudication of the charge, it appears by affidavit to the satisfaction of the court that such person is a sexual psychopath, the court may adjourn the proceeding, or suspend the sentence, as the case may be, and proceed to try the issue of alleged psychopathy; and if the person is found to be a sexual psychopath the court may commit him to a state hospital.

Section 5502.5 provides that whenever a person so committed recovers to the extent that in the opinion of the superintendent of the hospital he is no longer a menace to the health and safety of others, the said superintendent may certify such opinion to the committing court; and, if said court does not within 30 days after the receipt of said certification order the return of said person "to await the further action of the court with reference to the criminal charge against him," the superintendent may parole such person for a period of not to exceed five years. The section then further provides that "When, in the opinion of the superintendent of the hospital, the sexual psychopath has not recovered from his sexual psychopathy *and will not benefit by further care and treatment in the hospital,* the superintendent may return him into court *for further disposition of his case."* (Italics added.)

It must be conceded that petitioner has not recovered from his sexual psychopathy, and that he is still a menace to the health and safety of others. It must likewise be conceded, since the medical superintendent of the hospital has twice so certified and there is no evidence to the contrary, that he will not benefit by further care and treatment in the hospital, and that, as authorized by section 5502.5, *supra,* the medical superintendent has for this reason twice elected to return him into court for further disposition of his case. It is also of record that the trial court, on December 17, 1945, ordered his return to the court "to answer the criminal proceedings against him," and that the said criminal proceeding was set down for trial on February 19, 1946. It is also undeniable that Stone, on both occasions when he was returned to the court on the certificate of the medical superintendent, demanded that

he be tried on the original criminal charge. It also seems obvious from the record before us that the trial court recommitted Stone to the hospital because of representations by the district attorney that the lapse of time and the difficulty in then securing testimony for the prosecution of the criminal charge rendered a successful prosecution of the criminal charge doubtful, and because of the opinion of the medical superintendent that Stone was still a menace to the safety of others.

However, the applicable statutes do not authorize a court to continue the detention of a sexual psychopath indefinitely for those reasons, or until he shall have recovered from his psychopathy. And section 5502.5 specifically provides that when the medical superintendent concludes that such person will no longer benefit by hospitalization he may be returned to court ''for further disposition of his case.''

While the statute does not say, in so many words, that he shall be returned for trial on the original criminal charge, we are of the opinion that such was the intention of the Legislature. Otherwise there would have been no logical reason for making such provision in the act. The purpose of hospitalization under the sections of the code applicable to sexual psychopaths obviously is for treatment for the mental disease or disorder from which the psychopath is suffering; and they contemplate that in either of two contingencies such hospitalization shall cease, to wit, if the accused has recovered, or if he will no longer benefit by further care and treatment in the hospital. And where such person has been returned to court ''for further disposition of his case'' the conclusion seems to be obvious that by such language the Legislature meant that he should then be tried for the criminal offense. While it may well be said that where by lapse of time it has become probable that as the result of such a trial the defendant will be acquitted and be entitled to be restored to his liberty while still a menace to society because of his sexual psychopathy, we cannot therefore hold that accused, without ever being granted a trial on the charge against him, and without the imposition of any sentence fixing a term of imprisonment, may be incarcerated for the remainder of his life because he is such a psychopath, or that he may be bounced from the court to the hospital and from the hospital back to the court ad infinitum. If the Legislature had intended that a sexual psychopath might or should be, merely because of such condition, incarcerated in a hospital until cured, it would have so

provided in the statute. It is not contended that one not accused of crime may be deprived of his liberty because of a sexual psychopathic condition, nor do we believe that merely because a sexual psychopath is accused of crime he may be held indefinitely in a hospital when he will not benefit from further treatment there, and never permitted to have the question of his guilt or innocence of such crime determined.

Statutes applicable to sexual psychopaths charged with crime differ from those applicable to the insane, for sexual psychopaths are not necessarily insane and are not by reason of their mental condition unable to defend themselves from criminal charges; and if they are convicted of crime, and cannot be benefited by hospitalization, the public is as well protected from them when they are committed to a prison; and if they are innocent of the crime they are entitled to their liberty until again charged with crime or committed as insane under proceedings brought for that purpose under the applicable statutes. The presumption of innocence still protects petitioner, and he is not to be dealt with as a lawbreaker unless and until so adjudicated.

Respondent's counsel in their brief say that section 5502.5 should be so construed that if the psychopath is returned to the superior court as unrecovered and if the court finds it impractical or impossible to continue with the criminal prosecution, the court should not be forced to dismiss the proceeding, but should, in view of the prisoner's continued psychopathy, have a discretionary power to recommit him to the state hospital; that only in this manner can the statutory purpose to protect society be subserved; and that the construction advocated by petitioner would negate this purpose.

May we suggest that if, because of lapse of time during which a sexual psychopath has been detained in a hospital it may become impracticable to bring him to trial when it has been determined that he will no longer benefit from hospitalization, section 5501 may well be amended to provide that proceedings for determining his condition as a sexual psychopath may be had only *after* adjudication of the criminal charge. A comparable amendment to section 7067 of the Welfare and Institutions Code was made in 1939. And if the protection of society from sexual psychopaths is the sine qua non of the statutory enactments regarding such persons, and their confinement in state hospitals *until their recovery is accomplished* is necessary for such persons, then the Legisla-

ture should so provide in no uncertain language. This it has not done, but, on the contrary, it has provided that when in the opinion of the superintendent of the state hospital a sexual psychopath will not benefit by further treatment he may be returned to the court for further proceedings in his case. And when he has been so returned, as was Stone, and especially where no new proceedings have been instituted under sections 5500 et seq. and there is no reason to believe that he will be benefited by further hospitalization, it must have been the intention of the Legislature that he should then be tried upon the criminal charge. The words found in section 5502.5, "for further disposition of his case," evidence such intention. It is stated by respondent's counsel that section 5502.5 is ambiguous; and if this be the case, any uncertainty therein should, we believe, be resolved in favor of the person charged. (See *People* v. *Ralph,* 24 Cal.2d 575, 581 [150 P.2d 401].)

We are further of the opinion that when the court had once adjudicated Stone a sexual psychopath and committed him to the state hospital, it determined the issue of his mental condition and terminated that proceeding; and that it exceeded its powers in recommitting him after he was returned to the court and, as the order of the court effecting his return stated, he was being held to answer to the criminal charge. For these reasons we conclude that the order of recommitment made on December 13, 1945, was invalid, and that petitioner is entitled to his discharge from the custody of the said hospital; and it is so ordered.

Thompson, J., and Peek, J., concurred.