[Crim. No. 4587. Second Dist., Div. One. May 24, 1951.]

THE PEOPLE, Respondent, v. CARL TONY HECTOR, Appellant.

Gladys Towles Root for Appellant.

Edmund G. Brown, Attorney General, and William E. James, Deputy Attorney General, for Respondent.

DRAPEAU, J.—The father, grandfather, and a friend, took a 10-year-old boy and an 8-year-old girl to the beach on a Sunday morning. The men saw the children safely seated on the beach, and drove away in their car, to purchase some candy bars for them. In a few minutes they came back with the candy bars. Then they left again on some business of their own. This time they were gone for a half hour or so.

Before they left, the men noticed defendant walking up and down the beach. Defendant was clad in blue overalls and a brown shirt, and had a bucket in his hand. The men thought he was a fisherman.

When they came back the second time, the men saw defendant kneeling on the sand in front of the little girl, with his hands on her legs. In the meantime defendant had discarded his pants and brown shirt, and was clad in T-shirt and shorts. The rest of his clothing and his bucket were in a little pile a short distance away on the beach.

The grandfather ran toward defendant's clothing, thinking to intercept him there. When defendant saw the grandfather, he too ran for his clothing, and sure enough the two men met near the clothing and the bucket. The grandfather hit defendant with his fist, and called the police. Defendant said: ". . . all at once, like a bolt of lightning hit me, I was caught in the mouth and I was knocked back into the water."

Defendant was arrested, charged with, and convicted by the court of violation of Penal Code, section 288. He admitted a prior conviction in Mississippi, and imprisonment in that state, for the same type of offense. On his trial, on cross-examination, he admitted another conviction and imprisonment, in Arizona, for the same type of crime.

On the trial, the boy and girl testified to criminal acts upon the girl by defendant. Their testimony, along with the testimony of the father and grandfather, amply supports the verdict of the trial court.

Defendant testified that what he did was done with no unlawful intent; and he denied that he had his pants and brown shirt off.

■ Defendant's first contention on appeal, that the evidence does not support the verdict, is untenable. The substantial-evidence rule here applied needs no extended citation of authority. (*People* v. *Jones*, 36 Cal.2d 373 [224 P.2d 353].)

■ Defendant's second contention is that the trial court was required to follow section 5500 et seq. of the Welfare and Institutions Code, relative to sexual psychopaths.

In 1950 the Legislature amended section 5501 to read, in part, as follows:

"(c) When a person is convicted of a sex offense involving a child under 14 years of age and it is a felony, the court shall adjourn the proceeding or suspend the sentence, as the case may be, and shall certify the person for hearing and examination by the superior court of the county to determine

whether the person is a sexual psychopath within the meaning of this chapter.''

Instead of doing this, the trial court sentenced defendant to the state prison, and denied his request to file a petition in sexual psychopathy. It does not appear from the record that the amendment was brought to the court's attention. However, the law is mandatory and must be followed. (*People* v. *Barnett,* 27 Cal.2d 649 [166 P.2d 4] ; *People* v. *Thompson,* 102 Cal.App.2d 183 [227 P.2d 272].)

Apparently the social objective of the Legislature is to keep men like defendant sequestered from further contact with society for so long a time as they remain a menace to children. Experience has shown that such men, with their unnatural mentality, are unable to refrain from molesting children, and sometimes kill them in fear of being found out and punished. Therefore, a state policy designed to make sure that sexual psychopaths are put away for good, if necessary, is to be commended. (See *"Sane Laws for Sexual Psychopaths,"* 1 Stan.L.Rev. 481.)

To confine such men in prisons of maximum security has long impressed penologists as not solving the problem. For some time past it has been urged before the Legislature that some method of sequestration in mental hospitals should be adopted which will afford not only confinement for the individual so affected and consequent protection of society, but possibility of proper treatment and rehabilitation.

In this case, defendant has been found guilty and adjudged to be imprisoned in one of the state institutions for men. The law requires that before such imprisonment is carried into effect, the court shall follow the provisions of the sexual psychopath law; find whether defendant is a sexual psychopath; and, if it so finds, commit him to a state institution for the mentally ill.

Society is protected, because defendant will be where he can do no harm to children until the director of the mental institution and the court shall both conclude that he has ceased to be a menace to children, and the court shall grant him probation; or until he has served his sentence.

If he comes back to court for further disposition of his case, he may be committed to the state prison. (*People* v. *Tipton,* 90 Cal.App.2d 103 [202 P.2d 330].) If the director of the mental institution thinks he is cured and the trial court doesn't, defendant may be sent to state prison for the term required by the judgment.

The statute with which we are here concerned was adopted by the Legislature, and until it is modified or repealed the courts are without power to do other than apply the plain terms thereof. The policy of the state in matters of this kind is committed by the people to the Legislature; and whether such policy is sound or not must be determined by the legislative, and not the judicial, branch of the government.

The judgment of conviction is reversed only insofar as it commits defendant directly to imprisonment in a state prison, and is otherwise affirmed. The cause is remanded to the trial court with directions "to suspend sentence for the purpose of hearing and determining whether or not the defendant . . . is a sexual psychopath," to grant defendant the requested hearing, and after such hearing to commit the defendant to the Department of Institutions or to a state prison as may be determined according to law, and to make such other orders in the premises as may be meet. (*People* v. *Barnett, supra.*)

White, P. J., concurred.

DORAN, J.—I dissent.

In my opinion the record reveals definitely that appellant is not the type entitled to any consideration whatever under the provisions of section 5501 of the Welfare and Institutions Code.

Appellant's contentions, and the judgment and attitude of the trial judge, may be summarized by quoting the discussion between counsel and the court at the time the matter came up for pronouncing judgment at which time the motion or request of defendant was made. It appears that counsel did not represent defendant at the trial but was substituted on the day fixed for pronouncing judgment. At that time the following discussion, in part, occurred:

"Mrs. Root: In this case I feel the Court should appoint a psychiatrist. It is my belief that this man is a sexual psychopath, and I would like, your Honor, if the psychiatrists' findings are as I believe them to be, to file further a petition under the sexual psychopathy section. The Court: There is one report in the file already under section 1871, a report from Dr. Craham. Mrs. Root: I have not seen that, if your Honor pleases. I did not get a copy of it nor did I see it. That must have been previous to my coming into the case. . . ."

The case was continued for a week at which time the following occurred:

"Mrs. Root: If your Honor pleases, since being in court last—your Honor will recall that I did not try this charge originally but came into it at the time of the application for probation—it seems as though Dr. Crahan does not reach the point of coming in with a diagnosis of a sexual psychopathy, but states that the defendant was sane. That isn't the question at this particular moment. I feel, from the past record of this defendant and from his own statements, that this defendant should file under the sexual psychopathy act and have psychiatrists appointed to determine that factor, and the defendant is desirous of having that help and that treatment if your Honor sees fit under the psychiatric examination to make him a sexual psychopath. I would therefore ask the matter be continued a week, with permission to file a petition under the sexual psychopathy act. The Court: I have read the doctor's report here, as well as the probation report. The Court does not feel that that motion should be granted. Mrs. Root: Well, if your Honor pleases, apparently Dr. Crahan did not consider the question as to whether he was a sexual psychopath, . . . If the other psychiatrists do not hold him to be a sexual psychopath, certainly your Honor has wide discretion one way or another; but sending this man to the penitentiary has not helped him, and they all admit he belongs in an institution where they can take care of him. The Court: Is that an institution of maximum security? Mrs. Root: Well, 'maximum security' is hospitals relative to sex offenders. The new hospital, which is at Norwalk, treating sexual psychopaths is with the greatest of maximum security, and that is the leading hospital in the State of California. Certainly to send this man to the penitentiary among men, if he has this sexual deficiency, is not the answer, and your Honor has wide discretion after he returns from the hospital to then send him to the penitentiary if your Honor sees fit. The Court: His problem seems not to be with bothering men but with children. . . . His whole record going back to 1939 is apparently the same pattern. In Arizona, three to five years on a charge of lewd and lascivious conduct, attempted rape; and he traveled from Arizona down to the State of Mississippi, and in 1944 they have it here 'violating the person of a six-year-old female child.' He goes to the State Prison at Parchman, which is a pretty rugged place, so I have been informed, for three years. Mrs. Root:

Then, isn't the answer hospital care? Everything else has failed. In other words, let us give him an opportunity with doctors who are trained to take care of people. THE COURT: I have read this doctor's report here. MRS. ROOT: You will note, if your Honor pleases, that he does not touch upon the fact as to whether or not he is a sexual psychopath. Apparently he was appointed and he did not realize that the Court was interested in that phase. He goes upon the idea of insanity. THE COURT: Did you read the evaluation? MRS. ROOT: Yes, I did, if your Honor please, but I cannot feel that that evaluation is a sound evaluation as predicated upon the past. In other words, here is this defendant in every institution, three at least. San Quentin could offer no more. In other words, if your Honor sees fit, and he is found to be a sexual psychopath by other psychiatrists, send him to the hospital, give him a chance to be cured, and then he is returned for the Court to do with as the Court sees fit. The Court is not bound by any recommendation from the State hospitals but certainly it is an answer. I am merely asking the right and the permission to come to your Honor under the sexual psychopathy act. THE COURT: The motion will be denied.''

It will be seen from the foregoing that the argument before the trial judge was based on the contention that defendant was a ''sexual psychopath'' and the same contention is urged on appeal.

The prevailing opinion herein recites that, ''Experience has shown that such men, with their unnatural mentality, are unable to refrain from molesting children, and sometimes kill them in fear of being found out and punished. . . .

''To confine such men in prisons of maximum security has long impressed penologists as not solving the problem. For some time past it has been urged before the Legislature that some method of sequestration in mental hospitals should be adopted which will afford not only confinement for the individual so affected and consequent protection of society, but possibility of proper treatment and rehabilitation.''

I do not share the sentiment expressed in the foregoing nor am I concerned about sexual perverts at all from a sentimental standpoint. My chief concern is the safety and protection of children who are continually exposed to the activities and dangerous proclivities of these sexual perverts. It is the welfare of the children in such circumstances that is most important, for children form the nucleus of the American fam-

ily and the welfare of the American family is the equivalent of the public welfare. And so far as "treatment and rehabilitation" of these sexual perverts is concerned, there is no treatment and their "rehabilitation" is but a notion that exists only in the minds of fanatical social workers.

The prevailing opinion also recites that the court shall "find whether defendant is a sexual psychopath; and, if it so finds, commit him to a state institution for the mentally ill.

"Society is protected, because defendant will be where he can do no harm to children until the director of the mental institution and the court shall both conclude that he has ceased to be a menace to children, and the court shall grant him probation; or until he has served his sentence." Inasmuch as these perpetually menacing sexual perverts are not mental cases the foregoing is not the law and society is not protected.

Section 5501 of the Welfare and Institutions Code obviously must be construed and interpreted with relation to section 5500 which immediately precedes it. Section 5500 is as follows: "As used in this chapter 'sexual psychopath' means any person who is affected, in a form predisposing to the commission of sexual offenses, and in a degree constituting him a menace to the health or safety of others, with any of the following conditions: (a) Mental disease or disorder. (b) Psychopathic personality. (c) Marked departures from normal mentality."

There is not the slightest evidence in the record or even a suggestion that defendant suffered any mental disease. Psychopathy means mental disease or disorder and psychopathic means "Of or pertaining to, of the nature of, or characterized by, psychopathy." "Sexual psychopath" is just a coined phrase but, even as such, defendant does not come within its conditions as mentioned in (a), (b), and (c) of section 5500. It follows therefore that section 5501 does not apply.

Moreover, it is well known that these sexually abnormal acts are purely physical and in no sense mental. They have existed since the dawn of history, and history records brilliant mental achievements of men who were known to be victims of such offensive, obnoxious and repulsive sex abnormalities in some form or another. And there is no cure for these abnormal sex tendencies, psychiatrists to the contrary notwithstanding. Is there a cure for normal but unlawful sex tendencies? And incidentally, are they mental?

Until recent years mental afflictions were treated by physicians; now they are treated by the psychiatrists who also

are members of the medical profession but who specialize in mental disorders. They seldom, if ever, have occasion to refer to their knowledge of medicine or pathology. Psychologists perform the same function.

In my opinion sections 5500 and 5501 apply only to the insane and that the Legislature and the governor who signed the amendment to section 5501 on April 14, 1950, never intended otherwise. To hold otherwise would mean that law enforcement in connection with such offenses and the protection of innocent children in such circumstances would be turned over to the psychiatrists.

Moreover, it is noteworthy that the title of the amendment to section 5501 which added paragraph (c) as quoted in the prevailing opinion, is as follows, ''An act to amend sections. 5501, 5502 and 5503 of the Welfare and Institutions Code, *relating to sexual psychopaths.*'' (Italics added.)

When such matters come before the court the questions are addressed to the discretion of the court. Construing paragraph (c) with relation to the balance of section 5501, and section 5500 as above noted and also in the light of the title to the amendment, the trial court was called upon to determine whether the defendant was a ''sexual psychopath.'' This was done and there is nothing in the record to even suggest that because the court found that defendant was not insane, an abuse of discretion resulted. The mere violation of section 288 of the Penal Code justifies neither a presumption nor an inference that insanity exists. (See *People* v. *Smith,* 100 Cal.App.2d 162, 165-166 [223 P.2d 82].)

In my opinion it is incredible that the Legislature ever intended that the authority to determine the place and term of confinement of these sexual perverts should be vested in psychiatrists.

When insanity is a defense to the commission of a crime the law provides the procedure and unless waived, a jury may determine the issue. And even when no offense has been committed and an individual is charged with insanity a jury may be demanded. And in such circumstances it is common knowledge that usually as many psychiatrists testify on one side as the other; and the jury decides the issue, not the psychiatrists. Indeed, the layman is usually the first to detect insanity in an individual which later is merely confirmed by the psychiatrist.

The prevailing opinion cites *People* v. *Barnett,* 27 Cal.2d 649 [166 P.2d 4]. The issue considered in this dissenting

opinion however was not raised in the Barnett case, nor was it mentioned. The Barnett case therefore has no application to the above argument in the circumstances.

Moreover, the provisions of the Welfare and Institutions Code herein referred to clearly grant privileges and advantages to these so-called sexual perverts that are denied to others charged with crime. The age, "under fourteen," as provided in paragraph (c) is an arbitrary line drawn without reason. If the child is 14 or older the defendant is in an entirely different category. Article XIV of the Constitution of the United States provides no state shall "deny to any person within its jurisdiction the equal protection of the laws"; article XIV is still in effect.

It was unnecessary to certify the defendant "for hearing and examination by the Superior Court" as provided by paragraph (c) of section 5501; the defendant was already before the superior court. Apparently, therefore, the section does not apply; there is only one superior court. If it does apply, the proper court determined that defendant was not a "sexual psychopath." Thus section 5501 was complied with and defendant cannot now be heard to complain.

In the light of the record the action of the trial court was not only correct under the law but wise and just and should be upheld without qualification.