[Crim. No. 4823. Second Dist., Div. Two. June 19, 1952.]

THE PEOPLE, Respondent, v. VICTOR ALBIN, Appellant.

802

Victor Albin in pro. per., for Appellant.

Edmund G. Brown, Attorney General, and Elizabeth Miller, Deputy Attorney General, for Respondent.

MOORE, P. J.—Having been accused by information of the district attorney appellant was convicted of three counts of violating section 288 of the Penal Code on his plea of guilty. Thereupon proceedings were suspended and the same official filed his "Petition and Affidavit of Sexual Psychopathy." In such petition it was alleged that appellant was a sexual psychopath who is affected with mental disease and disorder and departures from normal mentality and was predisposed to the commission of sexual offenses in a degree constituting him a menace to the health and safety of others. On November 18, 1948, after a hearing upon the accusation, appellant being represented by counsel, the court adjudged him to be a sexual psychopath; ordered him to be confined in a state hospital, and upon his release to be returned to the court for further proceedings. November 8, 1951, appellant served his notice on the district attorney of his intention to move the court for an order to annul and vacate his commitment. Contemporaneous with the filing of such notice appellant filed his motion with the trial court for an order directing the issuance of a writ of attachment to the sheriff of Santa Barbara County commanding that officer to attach the body of appellant, confined in the state hospital, and produce him before the court at the time of the hearing of the motion to annul and set aside the commitment. His motion was based upon the ground that section 5502.5 of the Welfare and Institutions Code is unconstitutional.

Following the hearing at the time noticed, the court denied the motion for the writ of attachment as well as the motion for an order annulling and setting aside the order of commitment. This appeal is from both orders.

At the time of appellant's commitment in November, 1948, the substance of section 5502.5 was slightly different from the text of that section as it now appears in the code. The full text thereof will be found on the margin below.[1]

---

[1]Welfare and Institutions Code. Section 5502.5 as it was enacted in 1945 and in force in November, 1948, is as follows:

"Whenever a person who is committed to the Department of Institutions and confined in a State hospital as a sexual psychopath recovers from his sexual psychopathy to such an extent that in the opinion of the superintendent of the hospital he is no longer a menace to the health and safety of others, the superintendent may certify

The basis of the plea of the invalidity of the order of commitment is that section 5502.5 as it read in November, 1948, was indefinite and void for uncertainty and therefore the order committing him to the state hospital is void. A careful inspection of the statute under attack and the motion discloses that appellant has proceeded before making a serious study of the law governing sexual psychopaths.

It will be observed that the chapter relating to the care of sexual psychopaths includes some 19 sections which provide for the institution of proceedings for the ascertainment of whether or not a person accused of a crime is a sexual psychopath. No section other than 5502.5 in the entire law is under attack. That section is purely procedural in all its provisions. Adjudication of its nullity would prove of no advantage to appellant for the reason that he has already been convicted as a sex psychopath and has been committed pursuant to sections 5501, 5502, 5503, 5504, 5505 and 5506. Therefore even though section 5502.5 were invalid, appellant is already confined to the state hospital by virtue of the valid, final order. However, by reason of appellant's challenge and his desire to have his motion adjudicated his contentions must be explored.

Sections 5500 and 5501 have been expressly held constitutional by this court (*In re Keddy*, 105 Cal.App.2d 215, 217 [233 P.2d 159]) and impliedly so in *People* v. *Hector*, 104 Cal.App.2d 392 [231 P.2d 916]. Therefore, the area for appellant's exploitation of his thesis is reduced to narrow confines. ■ When the order committing appellant was entered, it was thereby determined that he was a sexual psychopath. (*In re Stone*, 87 Cal.App.2d 777, 784 [197 P.2d 847].) ■ The order became final. If the statute is unconstitutional now, it was unconstitutional then and an appeal therefrom was a legal remedy then available. Since it is final, an attack upon it can be made by no remedy other than those provided

said opinion to the committing court. Unless, within 30 days after the receipt of the certification the court shall order the return of the person to await the further action of the court with reference to the criminal charge against him, the superintendent of the hospital in which he is confined may parole the person under such terms and conditions as shall be specified by the superintendent, for a period of not less than five years. If at the end of the five-year period the person has not shown any tendency to revert to his sexual psychopathy, he may be discharged as recovered. The parole shall be on the same general terms and conditions as parole of the insane. When, in the opinion of the superintendent of the hospital the sexual psychopath has not recovered from his sexual psychopathy and will not benefit by further care and treatment in the hospital, the superintendent may return him to the court for further disposition of his case."

by law. A petition to annul the order of commitment is not such a remedy.

It is argued that section 5502.5 as it read when appellant was sent to the state hospital was unconstitutional because it does not impose a duty upon the superintendent of the hospital to form an opinion that appellant is no longer a menace to the health and safety of others which would enable the superintendent to certify. Neither does it require the superintendent to certify his opinion if he should form one or return the psychopath for further proceedings. He bases such contention upon the fact that the section provided that the superintendent "may" certify his opinion to the committing court. Such contention finds no favor in the authorities. ▮ it is a general rule of construction that a statute will not be hastily applied or construed to render it obnoxious to the Constitution if by any reasonable interpretation of its language it may be deemed valid. (*People* v. *Kaufman*, 49 Cal.App. 570, 572 [193 P. 953].) ▮ It is not uncommon that permissive language authorizing official action is held to be mandatory. (*City of Redding* v. *County of Shasta*, 36 Cal.App. 48, 54 [171 P. 806].) In *River Farms Co.* v. *Gibson*, 4 Cal.App.2d 731, 749 [42 P.2d 95], it was held that where the rights of a party are dependent upon the exercise of the power conferred, the word "may" is to be interpreted as a mandate. ▮ It is reasonable then to say that the word "may," used in section 5502.5 of the statute of 1945 under which appellant was committed, should be construed as "must" if it is necessary to do so in order to avoid holding the statute unconstitutional.

▮ Reading the section in the light of everyday common sense and of the statutory presumptions with respect to a public officer's doing his prescribed duties, it cannot be said that the superintendent of the hospital will act arbitrarily or capriciously and withhold his opinion if requested by a court or by a patient under his care. He knows that the purpose of the confinement of the sexual psychopath is to effect his recovery and to do so in the least time possible. Neither this court nor any other will assume that one who holds so important an office as that of a superintendent of a state hospital will ignore the law or will be activated by caprice. (*Vaughn* v. *Board of Police Commrs.*, 59 Cal.App.2d 771, 777 [140 P.2d 30].) In view of the foregoing, section 5502.5 is neither vague, indefinite nor uncertain, but is in all respects a valid procedural statute.

▮ The design of the Legislature in the enactment of the

sexual psychopath statute arose from a wise concept and a commendable vision. Its purpose is to sequester such unfortunates away from society so long as they constitute a menace to its health or safety. But along with the provision for their detention is the requirement that they be returned to court for discharge or that they be paroled by the superintendent of the hospital. ■ But neither section 5502.5 as enacted in 1945, nor any subsequent form thereof contemplates otherwise than that the superintendent of the hospital should not be required to hasten a patient back to the committing court in disregard of the necessity for deriving a careful diagnosis and a sound recommendation to that court. Because a learned physician knows the limitations upon therapeutic efforts to heal a mind diseased it is essential, in his estimating the progress of such a patient's recovery, that he be not so restricted by regulations as to cripple his freedom of action.

■ That the permissive language used in the 1945 edition of section 5502.5 was properly interpreted as mandatory is evidenced by the fact that when in 1949 the Legislature resumed consideration of the section, it renumbered the section 5517 and provided that when (a) the superintendent of the hospital holds the opinion that a sex psychopath in his custody is no longer a menace to the health and safety of others, or (b) believes that by virtue of the extent of the treatment the patient has already received he will not benefit by further care and treatment and is not a menace to the health and safety of others, the superintendent *shall* certify to the committing court such opinion; whereupon such court *shall* forthwith order the return of the patient to that court to await further action with reference to the criminal charge and the court *shall* resume proceedings and may place the accused on probation for not less than five years, if he is eligible for probation. (Stats. 1949, ch. 1325, § 7, p. 2313.)

The same section provides also (c) that if the superintendent believes the patient is still a menace to the health and safety of others, the superintendent and the Director of Mental Hygiene *shall* certify to the committing court their opinion, including a report, diagnosis and recommendation as to the patient's care, supervision or treatment. The section was reenacted in 1951 in substantially the same mandatory form. (Stats. 1951, ch. 448.)

■ It follows that no action lies against the Superintendent and the Director of Mental Hygiene for failure to certify a patient who has been committed under section 5502.5 unless

in a mandamus proceeding the court is convinced that those officials have capriciously or arbitrarily refused to form opinions and to make a certification of the patient's recovery or of his unsuccessful treatment or of his not having recovered from his sexual psychopathy. (See *Phyle* v. *Duffy,* 34 Cal.2d 144, 153 [208 P.2d 668].) But no other remedy appears to be available against the superintendent's nonaction.

Appellant contends that he has been denied due process of the laws and the equal protection of the laws (1) because of the superintendent's refusal to certify an opinion that appellant is no longer a menace to the public welfare and (2) because the superintendent had formed an opinion in the heat of passion and prejudice to the effect that appellant has not recovered from his sexual psychopathy and has failed to return appellant to the court for further orders with respect to his confinement notwithstanding such superintendent is of the opinion that appellant will not benefit from further treatment in the hospital. He insists that the superintendent by his refusal to certify deprives appellant of a statutory right to a further hearing in the court of original jurisdiction and of a trial by jury on the issue as to whether he has recovered. But in support of such contention, appellant presented no evidence. The denial of his motion to vacate the order was for that reason correct. (See *People* v. *Bailey,* 105 Cal.App.2d 150, 152 [232 P.2d 518] ; *People* v. *Kirk,* 98 Cal.App.2d 687, 692 [220 P.2d 976].)

### The Attachment

Appellant's contention that he had an "inalienable right" to submit a motion and to testify before the court, and to present witnesses in support of his claim is confuted by the practice of presenting affidavits or depositions in support of such a motion. (Code Civ. Proc., § 2009; *People* v. *Eastman,* 67 Cal.App.2d 357, 359 [154 P.2d 37].) A litigant's right to make motions affecting his rights in the progress of a lawsuit is not inalienable but may be exercised only in accordance with statutory law or rules of court. Having presented no evidence in support of his claim for a writ of attachment, it was properly denied.

The orders are affirmed.

McComb, J., and Fox, J., concurred.