[Crim. No. 3260.   First Dist., Div. One.   June 4, 1957.]

THE PEOPLE, Respondent, v. WILLIAM A. LEVY,
Appellant.

Peter M. Nakahara, under appointment by the District Court of Appeal, for Appellant.

Edmund G. Brown, Attorney General, Clarence A. Linn, Assistant Attorney General, and John S. McInerny, Deputy Attorney General, for Respondent.

PETERS, P. J.—The superior court, pursuant to the terms of the Sexual Psychopath Act (Welf. & Inst. Code, §§ 5500-5521) found Levy to be a sexual psychopath who would not benefit from further hospitalization and was a menace to the health and safety of others, and committed him for an indeterminate period to the Department of Mental Hygiene for placement for treatment as a sexual psychopath at San Quentin. Levy appeals, admitting that the lower courts complied precisely with the provisions of the relevant statutes, but contends that the act is substantially criminal in nature and is unconstitutional as applied to him. What appellant really seeks is a reappraisal by this court of the essential nature of the Sexual Psychopath Act and a reversal of a line of Supreme and appellate court decisions holding that the act is essentially civil in nature.

The background of this controversy is somewhat complex. In July of 1954 appellant was charged with the misdemeanor of annoying and molesting a child under the age of 18 in violation of section 647a, subdivision (1), of the Penal Code. He pleaded guilty in the municipal court. He had at least one prior misdemeanor sex conviction. After a probation hearing, the municipal court adjourned the criminal proceeding and certified appellant to the superior court, as provided in section 5501 of the Welfare and Institutions Code. As provided in the act, the superior court appointed two psychiatrists to examine appellant. They reported that he was an alleged sexual psychopath. Pursuant to section 5512 of the Welfare and Institutions Code the court found appellant to be an alleged sexual psychopath and committed him to the Mendocino State Hospital for a 90-day observation period. Within the time limited the medical director at Mendocino reported to the court that after appellant had been given physical and psychiatric examinations, and kept under observation, his condition was diagnosed as a case of "Sociopathic Personality Disturbance, Sexual Deviation (Homo-sexuality and Pedophilia)." The medical director at Mendocino also opined that appellant was a sexual psycho-

path as defined in the statute, was a menace to the health and safety of others, and would not benefit by treatment in a state hospital. The report observed that appellant had a long record of antisocial behavior and was a confirmed homosexual with a predisposition toward child molestation. Appellant was returned to the superior court, and that court on October 29, 1954, after a hearing, found appellant to be a sexual psychopath who would not benefit from care or treatment and remanded him to the municipal court for further proceedings.

In November of 1954 the municipal court, by stipulation of all concerned, again certified appellant to the superior court for a hearing to determine whether he was a sexual psychopath. On November 19, 1954, the superior court, on the basis of the previous report of the medical director of Mendocino, again found that appellant was a sexual psychopath, and this time ordered him committed for an indeterminate period to the Department of Mental Hygiene for placement in the Atascadero State Hospital. (Welf. & Inst. Code, § 5518.)

Some 17 months later, in April of 1956, the medical director at Atascadero diagnosed appellant's condition as being the same as the diagnosis at Mendocino. He certified that appellant had not recovered from his psychopathy and opined that appellant was still a menace to the health and safety of others. Pursuant to section 5517(c) of the Welfare and Institutions Code he recommended that appellant "be recommitted to the Department of Mental Hygiene for placement in an institutional unit for the treatment of sexual psychopaths in a facility (California State Prison at San Quentin) of the Department of Corrections." The superior court referred the case to its probation department, another hearing was had, and on May 11, 1956, appellant was again found to be a sexual psychopath and a menace to others, and the case was again remanded to the municipal court for further proceedings as provided in section 5518 of the Welfare and Institutions Code. The municipal court, after considering a supplementary probation report, promptly (May 16, 1956) recertified appellant to the superior court. Shortly thereafter that court, for the fourth time, determined that appellant was a sexual psychopath, concluded that he would not be benefited by further hospitalization, found that he was still a menace to the health and safety of others and that he was predisposed to the commission of sexual offenses, and committed him "for

an indeterminate period to the Department of Mental Hygiene, for placement in an Institutional Unit for the treatment of Sexual Psychopaths in a facility of the Department of Corrections, namely: The California State Prison at San Quentin." It is from this order that this appeal is taken. It should be mentioned that appellant was represented by counsel during most of these proceedings.

The first major contention of appellant is that the act, as applied to a person first convicted of a misdemeanor and certified to the superior court as a probable sexual psychopath, and then committed by that court to San Quentin for an indeterminate period, is unconstitutional for the reason that it subjects the accused to double jeopardy in violation of section 13, article I of the California Constitution. This argument is unsound if the proceeding under the act is essentially civil in nature, because the double jeopardy clause, of course, is applicable only to two successive criminal proceedings for the same offense.

█ This is no longer an open question in this state. The courts, whenever presented with this problem, have held the act to be civil in nature. In *Gross* v. *Superior Court,* 42 Cal. 2d 816 [270 P.2d 1025], the Supreme Court held that section 963 of the Code of Civil Procedure which deals with appeals in special proceedings which are, of course, civil in nature, was applicable to appeals under the act. The Supreme Court stated (p. 820) : "Sexual psychopathy proceedings are special proceedings of a civil nature which are collateral to the criminal case." In *People* v. *Gross,* 44 Cal.2d 859, 860 [285 P.2d 630], it was stated: "Sexual psychopathy proceedings are not criminal actions but special proceedings of a civil nature." In *People* v. *Howerton,* 40 Cal.2d 217, 219 [253 P.2d 8], the court pointed out: "The proceedings under section 5512 of the Welfare and Institutions Code are of a civil nature. [Citations.] Sexual psychopath proceedings need not be heard before the same judge who heard the criminal charge. [Citation.] The guilt of defendant is finally determined when the judgment of conviction is pronounced in the criminal proceeding, and nothing done in the sexual psychopath proceeding could modify or nullify that determination." In *People* v. *McCracken,* 39 Cal.2d 336, 346 [246 P.2d 913], it was pointed out that "It is obvious therefore that the primary purpose of the Legislature was to protect society against the activities of sexual psychopaths ..., and that it was not intended to make sexual psychopathy a mitigating circum-

stance. On the contrary, the sexual psychopath may be removed from society under the Sexual Psychopath Law until he is cured or until he is no longer considered a menace to the safety of others. The court may thereafter resume the criminal proceeding and impose the punishment allowed by law since the confinement as a sexual psychopath is not a substitute for punishment, the entire statutory procedure being civil in nature rather than penal." In *People* v. *Gross,* 139 Cal.App.2d 607, 613 [294 P.2d 88] (appeal dismissed and certiorari denied, 351 U.S. 977 [76 S.Ct. 1057, 100 L.Ed. 1493]), it is stated that section 1200 of the Penal Code does "not apply to a sexual psychopathy hearing which is a civil proceeding, collateral to the criminal case under which appellant was first arraigned." In *People* v. *Bachman,* 130 Cal.App.2d 445, 448 [279 P.2d 77], the District Court of Appeal came to the same conclusion as had the Supreme Court in *Gross* v. *Superior Court,* 42 Cal.2d 816 [270 P.2d 1025], using the following language: "It having been decided that sexual psychopathy proceedings are special proceedings of a civil nature . . . it follows that the rules on appeal in civil cases govern the time within which such appeals may be taken and that the rules on appeal in criminal cases have no application thereto so far as is concerned the time within which such appeals must be noticed." And in *In re Keddy,* 105 Cal.App.2d 215, 217 [233 P.2d 159], the appellate court stated: "A proceeding provided for by section 5501 of the Welfare and Institutions Code is a proceeding civil in nature, not criminal, and a person committed pursuant to the provisions thereof is not being confined for the commission of a criminal offense but because it has been determined that he is a 'sexual psychopath.'" (See also *People* v. *Olds,* 140 Cal.App.2d 156 [294 P.2d 1034] ; *People* v. *Martinez,* 130 Cal.App.2d 239 [278 P.2d 727] ; 24 A.L.R.2d 350 ; 44 C.J.S. (Insane Persons) § 130, 1956 Pocket Part.)

In the face of these authorities appellant nevertheless argues that although the act may have originally been conceived by the Legislature as a civil proceeding it has gradually developed into a criminal proceeding. This argument is predicated upon the fact that some procedural safeguards commonly existing in criminal cases also exist in cases under the sexual psychopath act. Thus, the person involved is entitled to bail pending determination of his status; he is entitled to be present at the hearing; if he has no counsel the court may appoint one for him or order the public defender

to serve; his liberty is, of course, at stake; and he is entitled to a state paid transcript on appeal. (See *Gross* v. *Superior Court*, 42 Cal.2d 816 [270 P.2d 1025].) In many of the cases cited, *supra*, these points were considered, but, nevertheless, the proceeding was held to be civil and not criminal. Certainly, if, as appellant admits, the act was originally civil in substance, the addition of procedural safeguards which are ordinarily incidental to criminal proceedings could not ordinarily convert the proceeding from a civil one to a criminal one. It is the substantive effect of the act and not its procedural aspects that controls its character. The above cases all hold that the act is not punitive in character, but civil in nature. That is the decisive point so far as the contention that jeopardy attaches is concerned.

█ Of course, even though the act is civil in nature it does involve a deprivation of personal liberty, and so is necessarily subject to constitutional safeguards. █ Based on this premise appellant argues that the definition of "sexual psychopath" in section 5500 of the Welfare and Institutions Code as applied to a person originally convicted of a misdemeanor is so vague, uncertain, arbitrary and unreasonable that it violates the due process clauses of the state and federal Constitutions. That section provides:

"As used in this chapter, 'sexual psychopath' means any person who is affected, in a form predisposing to the commission of sexual offenses, and in a degree constituting him a menace to the health or safety of others, with any of the following conditions:

"(a) Mental disease or disorder.

"(b) Psychopathic personality.

"(c) Marked departures from normal mentality."

The difficulty with this argument is that the courts have already directly or indirectly held that the act does not violate the equal protection and due process clauses. (See *In re Keddy*, 105 Cal.App.2d 215 [233 P.2d 159]; *People* v. *Gross*, 139 Cal.App.2d 607 [294 P.2d 88]; *People* v. *Albin*, 111 Cal. App.2d 800 [245 P.2d 660]; *People* v. *Hector*, 104 Cal.App. 2d 392 [231 P.2d 916]; *People* v. *Barnett*, 27 Cal.2d 649 [166 P.2d 4].)

Before the statute can be properly interpreted its purpose and intent must be ascertained. In *People* v. *McCracken*, 39 Cal.2d 336, 345 [246 P.2d 913], the Supreme Court stated: "The sexual psychopath law was passed by the Legislature because experience had shown that persons who came within

the classification of sexual psychopaths were unable to benefit from ordinary penal confinement and were in need of medical treatment. . . . The Legislature therefore gave the courts power to commit a person determined to be a sexual psychopath to a medical facility for an indeterminate period of time until the person had been cured or was unable to benefit from further treatment. . . .

". . . It is obvious therefore that the primary purpose of the Legislature was to protect society against the activities of sexual psychopaths."

The United States Supreme Court in *Minnesota* ex rel. *Pearson* v. *Probate Court*, 309 U.S. 270 [60 S.Ct. 523, 84 L.Ed. 744, 126 A.L.R. 530], has already passed on the constitutional questions here involved. There the Minnesota statute defined (p. 272) "psychopathic personality" as "the existence in any person of such conditions of emotional instability, or impulsiveness of behavior, or lack of customary standards of good judgment, or failure to appreciate the consequences of his acts, or a combination of any such conditions, as to render such person irresponsible for his conduct with respect to sexual matters and thereby dangerous to other persons."

The state court construed this provision as including (p. 273) "those persons who, by an habitual course of misconduct in sexual matters, have evidenced an utter lack of power to control their sexual impulses and who, as a result, are likely to attack or otherwise inflict injury, loss, pain or other evil on the objects of their uncontrolled and uncontrollable desire. It would not be reasonable to apply the provisions of the statute to every person guilty of sexual misconduct nor even to persons having strong sexual propensities. Such a definition would not only make the act impracticable of enforcement and, perhaps, unconstitutional in its application, but would also be an unwarranted departure from the accepted meaning of the words defined."

The Supreme Court of the United States, taking the statute precisely as it had been interpreted by the state court, held it immune from attack. The court held that the three criteria set forth in the statute were sufficiently certain. The court stated (p. 274) : "These underlying conditions, calling for evidence of past conduct pointing to probable consequences are as susceptible of proof as many of the criteria constantly applied in prosecutions for crime."

In reference to the claim that such a statute violated the equal protection of the laws clause the court stated (p. 274) :

"The question, however, is whether the legislature could constitutionally make a class of the group it did select. That is, whether there is any rational basis for such a selection. We see no reason for doubt upon this point. Whether the legislature could have gone farther is not the question. The class it did select is identified by the state court in terms which clearly show that the persons within that class constitute a dangerous element in the community which the legislature in its discretion could put under appropriate control. As we have often said, the legislature is free to recognize degrees of harm, and it may confine its restrictions to those classes of cases where the need is deemed to be clearest. If the law 'presumably hits the evil where it is most felt, it is not to be overthrown because there are other instances to which it might have been applied.' "

The definition in section 5500 of our act is obviously within the broad definition approved in the last quoted case. The three criteria used by the Supreme Court in upholding the Minnesota statute can also be used in construing the California statute.

The Legislature does not have detailed knowledge of psychiatry. In this field the best that it can do is adopt general broad definitions and leave it to the common sense and fairness of the courts to see to it that individual rights are not illegally affected. There are many similar statutes that are as "vague" as on the one under consideration. Thus, the definition of "mentally ill persons" in section 5040 of the Welfare and Institutions Code is quite general. Equally general and vague is the definition of persons of sound mind in section 21 of the Penal Code. Section 5250 of the Welfare and Institutions Code purports to define "feeble-minded persons" and such definition is not fundamentally different from the one under consideration. Reference should also be mentioned to the broad definitions contained in the compulsory sterilization act —section 6624 of the Welfare and Institutions Code—upheld in *Buck* v. *Bell*, 274 U.S. 200 [47 S.Ct. 584, 71 L.Ed. 1000].

The California statute has been vigorously criticized. (See Hacker and Frym, 43 Cal.L.Rev. 766.) The arguments there contained should more appropriately be addressed to the Legislature than to the courts. While the definition of "sexual psychopath" contained in the statute is somewhat general, considering our present knowledge in the field of mental sciences, any specific definition would unduly fetter expansion and experimentation in the field. Certainly we know that

all psychiatrists do not agree as to the nature of the type of mental illness here involved, so that, by necessity, any legal definition must be a broad one. (See 39 Columb.L.Rev. 534; 1 Stanford L.Rev. 486.)

The last contention of appellant is closely connected with the points already discussed. It is that the statutory procedure which permits a person convicted of a misdemeanor to be transferred from court to court, and from hospital to court to hospital to court as was appellant, is arbitrary and unreasonable, particularly when such procedure culminates in an indeterminate commitment to San Quentin. This argument is based on a misconception of the purposes of the statute. ██ The main purpose of the act is to protect society against the activities of sexual psychopaths. The secondary purpose is to rehabilitate the sexual psychopath. (See *People* v. *McCracken*, 39 Cal.2d 336 [246 P.2d 913] ; *People* v. *Hector*, 104 Cal.App.2d 392 [231 P.2d 916].) In *People* v. *McCracken* at page 346 the Supreme Court properly pointed out that "the sexual psychopath may be removed from society under the Sexual Psychopath Law until he is cured or until he is no longer considered a menace to the safety of others." Thus, the place of commitment and the possibility of criminal punishment on the misdemeanor charge does not affect the validity of the objectives of the act, which are admittedly proper.

The emphasis that appellant places on the fact that he was originally convicted of a misdemeanor, and now finds himself in San Quentin, possibly for life, is misplaced. This argument would be sound only were his confinement punishment. As we have already seen, the purpose of the confinement is to protect society and to try and cure the accused.

The arguments of appellant are without merit. The order appealed from is affirmed.

Bray, J., and Wood (Fred B.), J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied July 31, 1957.