[Civ. No. 11243.   Third Dist.   Mar. 4, 1966.]

THE PEOPLE, Plaintiff and Respondent, v. RICHARD
RANCIER, Defendant and Appellant.

James T. Ford, under appointment by the District Court
of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Doris H. Maier, Assistant Attorney General, and Michael Buzzell, Deputy Attorney
General, for Plaintiff and Respondent.

REGAN, J.—This is an appeal from an order of the superior court committing appellant to the Department of Mental Hygiene as a mentally disordered sex offender and directing his place of commitment to be the Reception and Guidance Center, California Medical Facility, Vacaville, California.

In compliance with section 5512 of the Welfare and Institutions Code,[1] appellant was ordered confined until no longer a danger to the health and safety of others. He was delivered to Vacaville as ordered and subsequently transferred to the California Men's Colony, East Facility at Los Padres, in accordance with section 5518 of the Welfare and Institutions Code.[2] Appellant attacks the constitutionality of the code sections under which he stands committed, alleging the confinement is cruel and unusual, penal in nature, and violative of the due process clause of the California Constitution. Appel-

---

[1]Welfare and Institutions Code, section 5512, provides in part:

"If the superintendent of the hospital or person in charge of the county facility reports to the committing court that the person is a mentally disordered sex offender but will not benefit by care or treatment in a state hospital and is a danger to the health and safety of others, the court shall then cause the person to be returned to the court in which the criminal charge was tried to await further action with reference to such criminal charge. Such court shall resume the proceedings and shall impose sentence or make such other suitable disposition of the case as the court deems necessary. If, however, such court is satisfied that the person is a mentally disordered sex offender but would not benefit by care or treatment in a state hospital and is a danger to the health and safety of others, it may recertify the person to the superior court of the county. If the superior court, after hearing, finds that the person is a mentally disordered sex offender but would not benefit by care or treatment in a state hospital and is a danger to the health and safety of others, it may make an order committing the person for an indefinite period to the Department of Mental Hygiene for placement in a state institution or institutional unit for the care and treatment of mentally disordered sex offenders designated by the court and provided pursuant to Section 5518.''

[2]Welfare and Institutions Code, section 5518, provides in part:

"The Director of Mental Hygiene, with the approval of the Director of Corrections and the Director of Finance, may provide on the grounds of a state institution or institutions under the jurisdiction of the Department of Corrections or the Department of Mental Hygiene one or more institutional units to be used for the custodial care and treatment of mentally disordered sex offenders. Each such unit shall be administered in the manner provided by law for the government of the institution in which such unit is established.

"The court shall cause the person so recommitted to be delivered to the state institution or the institutional unit so designated. The person shall remain therein or in any other such institution or institutional unit to which he may be transferred by the Director of Mental Hygiene until the person is no longer a danger to the health and safety of others. Thereupon the proceedings set forth in Section 5517 shall be followed with respect to the certifying of an opinion to the committing court and the release of the person thereby.''

lant further contends that the provisions of the statute relating to recommitment are vague and uncertain, and that the enforcement of these provisions is, perforce, arbitrary and unreasonable.

We have concluded appellant's contentions in this respect are not well taken and the order of the trial court should be affirmed.

Appellant was charged with a violation of Penal Code section 647a, subdivision (1), a misdemeanor, to which charge he pleaded guilty, and, having been found by the court to be a mentally disordered sex offender within the meaning of section 5500 of the Welfare and Institutions Code, was placed in Atascadero State Hospital for observation and diagnosis. Sixty days later, the superintendent and medical director having reported to the court that appellant could benefit by treatment, the court ordered appellant committed to Atascadero for such treatment.

Approximately one year later, pursuant to the provisions of section 5517, subdivision (b), of the Welfare and Institutions Code, the Superintendent and Medical Director of Atascadero reported to the court that appellant had reached maximum hospital benefit and that he was not amenable to treatment in the hospital setting and remained a danger to society. Whereupon the court ordered appellant's return, a hearing was held pursuant to section 5512 et seq., and appellant's recommitment followed.

Sexual psychopathy proceedings are not criminal actions but special proceedings of a civil nature. (*People* v. *Gross,* 44 Cal.2d 859, 860 [285 P.2d 630].) In *People* v. *McCracken,* 39 Cal.2d 336, 346 [246 P.2d 913], it was pointed out that the primary purpose of the enactment by the Legislature of the sexual psychopathy statutes was to protect society against the activities of sexual psychopaths. The court said (at page 346) : ". . . [T]he sexual psychopath may be removed from society under the Sexual Psychopath Law until he is cured or until he is no longer considered a menace to the safety of others. The court may thereafter resume the criminal proceeding and impose the punishment allowed by law since the confinement as a sexual psychopath is not a substitute for punishment, the entire statutory procedure being civil in nature rather than penal.'' (See also *People* v. *Levy,* 151 Cal.App.2d 460, 464 [311 P.2d 897].)

Appellant's principal contention is that in his case his confinement is punishment and that because he is not amenable

to treatment one of the purposes of the statutes, to wit, the cure of the sexual psychopath, cannot be carried out and as to him the statutes are arbitrary and unreasonable; that further, as to him, his commitment is akin to life imprisonment without possibility of parole, which is cruel and unusual punishment in view of the fact that penal sanctions attached to his criminal conviction are limited to a jail sentence of six months in the county jail. This court does not accept appellant's interpretation.

The individual declared to be a sexual psychopath and declared not amenable to treatment, may, pursuant to section 5519 and at subsequent intervals of not less than six months, be returned to the court for hearing and recommendation for his future care, supervision or treatment. This procedure may continue until the individual is no longer a danger to the health and safety of others. We cannot say on the record before us that appellant has been or in the future will be denied treatment. In *People* v. *Levy, supra,* 151 Cal.App.2d 460, 468, the court said:

''The last contention of appellant is closely connected with the points already discussed. It is that the statutory procedure which permits a person convicted of a misdemeanor to be trans ferred from court to court, and from hospital to court to hospital as was appellant, is arbitrary and unreasonable, particularly when such procedure culminates in an indeterminate commitment to San Quentin. This argument is based on a misconception of the purposes of the statute. The main purpose of the act is to protect society against the activities of sexual psychopaths. The secondary purpose is to rehabilitate the sexual psychopath. (See *People* v. *McCracken,* 39 Cal.2d 336 [246 P.2d 913]; *People* v. *Hector,* 104 Cal.App.2d 392 [231 P.2d 916].) In *People* v. *McCracken* at page 346 the Supreme Court properly pointed out that 'the sexual psychopath may be removed from society under the Sexual Psychopath Law until he is cured or until he is no longer considered a menace to the safety of others.' Thus, the place of commitment and the possibility of criminal punishment on the misdemeanor charge does not affect the validity of the objectives of the act, which are admittedly proper.

''The emphasis that appellant places on the fact that he was originally convicted of a misdemeanor, and now finds himself in San Quentin, possibly for life, is misplaced. This argument would be sound only were his confinement punishment. As we

have already seen, the purpose of the confinement is to protect society and to try and cure the accused.''

Appellant's contention that ''the statute is void for uncertainty'' is also without merit as the courts have already decided. We find in *Levy* the following holding of the court at page 465:

''Before the statute can be properly interpreted its purpose and intent must be ascertained. In *People* v. *McCracken,* 39 Cal.2d 336, 345 [246 P.2d 913], the Supreme Court stated: 'The sexual psychopath law was passed by the Legislature because experience had shown that persons who came within the classification of sexual psychopaths were unable to benefit from ordinary penal confinement and were in need of medical treatment. . . . The Legislature therefore gave the courts power to commit a person determined to be a sexual psychopath to a medical facility for an indeterminate period of time until the person had been cured or was unable to benefit from further treatment. . . .

'' '  .  .  .  .  .  .  .  .  .  ,'

''The United States Supreme Court in *Minnesota* ex rel. *Pearson* v. *Probate Court,* 309 U.S. 270 [60 S.Ct. 523, 84 L.Ed. 744, 126 A.L.R. 530], has already passed on the constitutional questions here involved. There the Minnesota statute defined (p. 272) 'psychopathic personality' as 'the existence in any person of such conditions of emotional instability, or impulsiveness of behavior, or lack of customary standards of good judgment, or failure to appreciate the consequences of his acts, or a combination of any such conditions, as to render such person irresponsible for his conduct with respect to sexual matters and thereby dangerous to other persons.'

''The state court construed this provision as including (p. 273) 'those persons who, by an habitual course of misconduct in sexual matters, have evidenced an utter lack of power to control their sexual impulses and who, as a result, are likely to attack or otherwise inflict injury, loss, pain or other evil on the objects of their uncontrolled and uncontrollable desire. It would not be reasonable to apply the provisions of the statute to every person guilty of sexual misconduct nor even to persons having strong sexual propensities. Such a definition would not only make the act impracticable of enforcement and, perhaps, unconstitutional in its application, but would also be an unwarranted departure from the accepted meaning of the words defined.'

''The Supreme Court of the United States, taking the

statute precisely as it had been interpreted by the state court, held it immune from attack. The court held that the three criteria set forth in the statute were sufficiently certain. The court stated (p. 274) : 'These underlying conditions, calling for evidence of past conduct pointing to probable consequences are as susceptible of proof as many of the criteria constantly applied in prosecutions for crime.'

"In reference to the claim that such a statute violated the equal protection of the laws clause the court stated (p. 274) : 'The question, however, is whether the legislature could constitutionally make a class of the group it did select. That is, whether there is any rational basis for such a selection. We see no reason for doubt upon this point. Whether the legislature could have gone farther is not the question. The class it did select is identified by the state court in terms which clearly show that the persons within that class constitute a dangerous element in the community which the legislature in its discretion could put under appropriate control. As we have often said, the legislature is free to recognize degrees of harm, and it may confine its restrictions to those classes of cases where the need is deemed to be clearest. If the law "presumably hits the evil where it is most felt, it is not to be overthrown because there are other instances to which it might have been applied." ' '

"The definition in section 5500 of our act is obviously within the broad definition approved in the last quoted case. The three criteria used by the Supreme Court in upholding the Minnesota statute can also be used in construing the California statute."

Here we note the principle enunciated in *In re De La O,* 59 Cal.2d 128 [28 Cal.Rptr. 489, 378 P.2d 793], wherein the constitutionality of chapters 11 and 12, title 7, of part III of the Penal Code (regulation of the narcotic drug traffic) was questioned. The court, noting the holding in *Robinson* v. *California,* 370 U.S. 660 [82 S.Ct. 1417, 8 L.Ed.2d 758], stated at pages 135-136 : " 'In the interest of discouraging the violation of such laws, or in the interest of the general health or welfare of its inhabitants, a State might establish *a program of compulsory treatment* for those addicted to narcotics. Such a program of treatment might require *periods of involuntary confinement.*' " In *De La O,* the *petitioner,* his criminal action having been suspended, was being held for involuntary restraint for compulsory treatment and rehabilitation procedures. The issue was whether the statutory scheme impris-

oned petitioner as a criminal or constituted compulsory treatment of petitioner as a sick person requiring periods of involuntary confinement. It was held (p. 136) that "If the former, it would be unconstitutional under Robinson as cruel and unusual punishment (U.S. Const., 8th and 14th Amends.; Cal. Const., art. I, § 6); if the latter, it would be valid under the same decision as a constitutionally permissible exercise of the state's power to regulate the narcotic drug traffic."

The evidence is sufficient to support the finding of the court that appellant was a mentally disordered sex offender not amenable to treatment but still a danger to the health and welfare of society. As such he may be dealt with by compulsory treatment, involving quarantine, confinement or sequestration. There is nothing in the record which discloses that his present confinement and care has such external indicia of criminality so as to demonstrate that the civil purpose, mechanism, and operation of the program set forth in the statutes are outweighed by the external criminal indicia. If this were so petitioner's commitment and confinement thereunder could well constitute cruel and unusual punishment within the meaning of *Robinson* v. *California, supra,* and as so recognized in *De La O, supra,* 59 Cal.2d at pages 149-150.

We hold the procedures defined by sections 5500-5519 of the Welfare and Institutions Code are not intended as punishment and petitioner here is not confined as a criminal but as a mentally disordered sex offender. "It must be remembered that sexual psychopathy procedures are essentially civil in nature, even though the place provided for custodial care and treatment be on the grounds of a state prison." (*People* v. *Barzee,* 213 Cal.App.2d 139, 141 [28 Cal.Rptr. 692].)

The order is affirmed.

Friedman, Acting P. J., and White, J. pro tem.,* concurred.

---

*Assigned by the Chairman of the Judicial Council.