[Crim. No. 2589. Third Dist. Jan. 26, 1955.]

THE PEOPLE, Respondent, v. JAMES FRANKLIN BACHMAN, Appellant.

Cecil J. Bishop for Appellant.

Edmund G. Brown, Attorney General, and Gail A. Strader, Deputy Attorney General, for Respondent.

VAN DYKE, P. J.—This is a motion to dismiss appeal. James Franklin Bachman, defendant, appellant herein, was convicted of a violation of section 288 of the Penal Code, to which charge he pleaded guilty. This conviction was for a felonious sex offense involving a child under 14 years of age. Judgment committing the defendant to imprisonment at the state prison for the term prescribed by law was pronounced on March 25, 1954. Pursuant to the provisions of section 5501, subdivision (c) of the Welfare and Institutions Code, the court suspended the execution of the sentence and certified Bachman for hearing and examination to determine whether he was a sexual psychopath within the meaning of chapter 4, part 1, subdivision 6 of said code. The hearing was held. The court-appointed psychiatrists reported that he was a sexual psychopath and on April 15th the court made an order to that effect and ordered that he be placed temporarily in the Mendocino State Hospital for an observation period not to exceed 90 days; and further that the superintendent of that hospital report to the court within said period his findings as to the sexual psychopathy of defendant. This order was made agreeable to the provisions of section 5512 of the Welfare and Institutions Code and pursuant thereto Bachman was received and observed at the hospital. On June 24th there was filed in the cause the report of the super-

intendent and medical director of the hospital that Bachman was not a sexual psychopath as defined under the code, that he was not a menace to the health and safety of others, and that he would not benefit by care and treatment in a state hospital. The superintendent recommended that Bachman be returned to the court for further proceedings in the criminal case against him. On June 29th following Bachman appeared in court and it was ordered that the judgment and sentence in the criminal case be executed, and he was remanded to the custody of the sheriff of the county, to be delivered to the state prison. In the meantime, however, and on the coming in of the medical report, Bachman asked of the court that it take further evidence as to whether he was a sexual psychopath, stating that a staff member of the hospital was in disagreement with the medical superintendent's findings. He asked the court to permit this psychiatrist to testify. To this request the court consented and on June 29th the psychiatrist, Doctor Clarence S. Bennett, testified that he had been the physician actively in charge of Bachman's case while he was at the hospital for observation, that in his opinion Bachman was a sexual psychopath and would benefit from hospital treatment. Thereafter the court made the order above recited, remanding Bachman to the sheriff for delivery to the prison to serve out the sentence theretofore imposed. Within 60 days from the date of that order, but far in excess of 10 days from that date, Bachman filed a written notice of appeal stating that he appealed from said order of June 29th against the said defendant, James Franklin Bachman, pursuant to section 5512 of the Welfare and Institutions Code, that defendant, James Franklin Bachman, was not a menace to the health and safety of others, and that he would not benefit by care and treatment in a state hospital.

The People have moved to dismiss said appeal upon the grounds: 1. That it was not timely, not having been taken within 10 days after entry of the order appealed from; and, 2. That it was an attempt to take an appeal from a nonappealable order.

We hold that the appeal was taken in time.

" . . . Sexual psychopathy proceedings are special proceedings of a civil nature which are collateral to the criminal case." (*Gross* v. *Superior Court,* 42 Cal.2d 816, 820 [270 P.2d 1025].)

" . . . The entire statutory procedure [in sexual psychopathy

448

proceedings] . . . [is] civil in nature rather than penal."
(*People* v. *McCracken,* 39 Cal.2d 336, 346 [246 P.2d 913].)

"The proceedings under section 5512 of the Welfare and
Institutions Code are of a civil nature." (*People* v. *Howerton,*
40 Cal.2d 217, 219 [253 P.2d 8].)

" . . . A proceeding provided for by section 5501 of the
Welfare and Institutions Code is a proceeding civil in nature,
not criminal, . . . " (*In re Keddy,* 105 Cal.App.2d 215, 217
[233 P.2d 159].)

" . . . Sexual psychopathy proceedings . . . [are] civil in
nature." (*People* v. *Gross,* 115 Cal.App.2d 502, 505 [252
P.2d 416].)

" . . . In the absence of statutory provision denying the
right to appeal, an appeal may be taken by virtue of the
general provisions of section 963 [Code Civ. Proc.] allowing
appeals in special proceedings. . . . While there is no provision
in the Welfare and Institutions Code for an appeal in sexual
psychopath proceedings as there are for some of the pro-
ceedings there authorized, we do not believe that is an indica-
tion that the general provisions on appeal (Code Civ. Proc.,
§ 963) do not apply. It would thus appear that the original
order of commitment as a sexual psychopath is appealable
as a final judgment in a special proceeding and that subse-
quent orders made under section 5519 would be appealable
as special orders after final judgment." (*Gross* v. *Superior
Court, supra,* pp. 820-821.)

It having been decided that sexual psychopathy pro-
ceedings are special proceedings of a civil nature and that
orders therein are appealable under the provisions of section
963 of the Code of Civil Procedure, it follows that the rules
on appeal in civil cases govern the time within which such
appeals may be taken and that the rules on appeal in criminal
cases have no application thereto so far as is concerned the
time within which such appeals must be noticed.

We hold that the order appealed from is nonappealable
and for that reason the appeal must be dismissed. As here-
tofore noted, section 5501, subdivision (c), of the Welfare and
Institutions Code provides that:

"When a person is convicted of a sex offense involving a
child under 14 years of age and it is a felony, the court shall
adjourn the proceeding or suspend the sentence, as the case
may be, and shall certify the person for hearing and exami-
nation by the superior court of the county to determine

whether the person is a sexual psychopath within the meaning of this chapter.''

Section 5512 of the Welfare and Institutions Code provides that:

''If, after examination and hearing, the judge finds that the person is a sexual psychopath within the meaning of this chapter, he shall make and sign an order that the person be placed temporarily in a suitable psychiatric facility maintained by a county or in a state hospital . . . designated by the court for observation and diagnosis for a period not to exceed 90 days, . . .''

The same section further provides that if the superintendent of the hospital or person in charge of the county facility reports to the court that the person is not a sexual psychopath or that he is a sexual psychopath but will not benefit by care and treatment in a hospital the person shall be returned to the court for further disposition of his case and that the court shall then cause the person to be so returned to the court in which the criminal charge was tried to await further action *"with reference to such criminal charge."* There are further provisions which call for a further hearing on the issue of sexual psychopathy if the report is that the person is a sexual psychopath and would benefit by hospital treatment, which provisions declare that the court may accept such report if verified or may take additional evidence; and after such further hearing may make an order committing the person to the Department of Mental Hygiene for placement and treatment; and that the person so committed may have the same rights to a jury trial upon the issue of his sexual psychopathy as is provided in the Welfare and Institutions Code for mentally ill persons. But the statutes make no provision for any further hearing if the report of the medical authority is that the person either is not a sexual psychopath or is a sexual psychopath but will not benefit by hospital treatment. ■ When such a report is made, the sexual psychopathy proceedings are at an end and the specific direction of the code is that the person is returned to the court in which he was convicted, which, of course, may be the same court which instituted the psychopathy proceedings, or a different court, to await further action, not with reference to psychopathy, but with reference to the criminal charge of which he was convicted. The plain purport of the statute in this respect is that the court may

not disregard the report of the superintendent of the hospital or the person in charge of the county facility, but must abide by the same, treat the psychopathy proceedings as at an end and proceed in the criminal case. This action the court in the instant case took, and, although at the request of Bachman it took the evidence of Dr. Bennett, nevertheless any issue as to the further treatment of Bachman as a sexual psychopath was ended by the report of the superintendent of the hospital to which he had been sent for observation. The situation is so closely analogous to that considered by the Supreme Court in the case of *In re Phyle*, 30 Cal.2d 838 [186 P.2d 134], that we think the decision herein must be governed by what was there said. In that case Phyle had been found guilty of first degree murder and sentenced to be executed. While awaiting execution at the state prison at San Quentin the warden of that prison initiated proceedings pursuant to section 3701 of the Penal Code to determine the question of defendant's sanity. After a jury trial defendant was adjudged insane and committed to the Mendocino State Hospital. About one year thereafter the superintendent of that hospital certified to the governor that Phyle had recovered his reason and the governor then issued a warrant to the warden appointing a day for Phyle's execution. He petitioned for a writ of habeas corpus, contending that the superintendent of the hospital had no authority to release him to the warden without an adjudication of a competent court that he had recovered his reason. The Supreme Court held that it was apparent from reading the pertinent sections of the Penal Code that the Legislature had no intention of providing for a judicial determination of the question of Phyle's restoration to sanity, but on the contrary expressly provided that restoration to sanity should be determined by the hospital superintendent, and that when that superintendent reported such restoration to sanity to the governor, courts were powerless to adjudicate that issue. The court pointed out that in a number of instances the Legislature had provided that restoration to sanity was to be determined solely by the superintendent of the hospital in which the person adjudged to have become insane was held; and that while continued detention in the hospital might be inquired into upon a writ of habeas corpus, nevertheless when the medical superintendent of the hospital determined that sanity had been restored courts were without power to adjudicate otherwise or at all upon that issue. Said the court in the cited case while discussing action by the

medical superintendents when trials had been interrupted by insanity of the defendant:

" '. . . The Penal Code undoubtedly prescribes the exclusive manner by which the proceedings shall be set in motion when the defendant is restored to sanity or is not insane.' (*People* v. *Superior Court, supra,* [4 Cal.2d 136] at 145 [47 P.2d 724].) After the superintendent determines that a defendant placed in his custody pursuant to sections 1370 to 1372 of the Penal Code is sane, the defendant is returned to the court in which his trial had begun. It is not necessary for the verdict finding him insane to be vacated before the trial court may proceed. (*People* v. *Rice,* 83 Cal.App. 55, 60 [256 P. 450].)''

The statute under consideration here is as clear and conclusive upon the matter under consideration as were those statutes referred to by the Supreme Court in the Phyle case. ■ Upon the statute, therefore, and upon the authority of that case and of the cases therein cited, we hold that the statutory provisions here under consideration do not contemplate any further judicial determination as to sexual psychopathy when the medical authority reports to the court that the person referred for observation either is not a sexual psychopath or that, being such, he will not benefit by hospital treatment. Such a report concludes the psychopathy proceeding without any further order of court. ■ The order of the court here made, so far as it refers to the psychopathy proceedings, is a mere recital of the termination thereof by the report of the medical superintendent and does not constitute an appealable order in the psychopathy proceeding.

The appeal is dismissed.

Peek, J., and Schottky, J., concurred.