14 Cal.Rptr. 604]

[Crim. No. 7230. Second Dist., Div. One. July 19, 1961.]

THE PEOPLE, Respondent, v. ALVIN CHARLES ADAMS,
Appellant.

Alvin Charles Adams, in pro. per., for Appellant.

Stanley Mosk, Attorney General, and Clara E. Kauffman, Deputy Attorney General, for Respondent.

LILLIE, J.—In 1956 defendant pleaded guilty before a committing magistrate in Los Angeles County to a charge of violating section 288 of the Penal Code; thereupon defendant was certified to the superior court for pronouncement of judgment. After certain proceedings were had under the provisions of the law relating to sexual psychopaths (Welf. & Inst. Code, §§ 5500 et seq.), more than three years later, on March 22, 1960, he was sentenced to state's prison for the term prescribed by law. Claiming that the court lacked jurisdiction to do so because of noncompliance with the pertinent portions of the chapter on sexual psychopaths, he has appealed from the judgment.

The events leading up to the present appeal can be summarized as follows: Subsequent to defendant's plea of guilty, the matter was transferred to department 41 of the superior court, where defendant denied a prior conviction and waived a jury trial on that issue. Two doctors were appointed to

determine whether defendant was a sexual psychopath (Welf. & Inst. Code, § 5504) ; on December 4, 1956, upon recommendation of the two doctors, defendant was adjudged to be such a psychopath and he was committed to Atascadero State Hospital, criminal proceedings having been suspended, for observation and diagnosis (Welf. & Inst. Code, § 5512)—the period of observation and diagnosis ''not to exceed ninety days.''

Meantime, on December 10, 1956, defendant had pleaded guilty in a Santa Monica branch of the Los Angeles Superior Court to another information also charging violation of section 288, Penal Code; he denied a prior conviction therein alleged. A transcript of the proceedings reveals that the court was subsequently advised of the matter pending in department 41 where the court, upon recommendation of two doctors, had previously committed defendant for a 90-day observation period at Atascadero; it was accordingly stipulated that the Santa Monica court could read and consider the several reports of the two psychiatrists appointed in the department 41 case with the same force and effect as if those doctors had testified in open court under oath. The reports were accordingly considered by the court which found that defendant was a sexual psychopath and committed him to Atascadero for observation —likewise for a period not to exceed 90 days. On February 26, 1957, within the above-mentioned 90-day period, there was filed with the Santa Monica court a report by the hospital superintendent at Atascadero relating to defendant's case; therein an opinion was expressed that defendant was a sexual psychopath and a menace to the health and safety of others, but would benefit by further treatment in a state hospital. On March 4, 1957, pursuant to a recommendation by the superintendent to that effect, the court ordered that defendant be committed to the Department of Mental Hygiene for placement at Atascadero for an indeterminate period (Welf. & Inst. Code, § 5512) ; as provided by section 5512, *supra*, defendant was served with a copy of the order on March 7, 1957, and he admits that he signed a waiver of a jury trial. More than two years later, on December 14, 1959, the superintendent at Atascadero filed a certificate with the Santa Monica court, recommending that defendant be sentenced for his original offense (Welf. & Inst. Code, § 5517, subd. (c)) ; at a hearing on December 16, 1959, defendant and respective counsel waived trial by jury on the question of sexual psychopath. The court thereupon found that defendant was a sexual psychopath and a menace to the health and safety of others; contrary, however,

to the recommendation of the superintendent, defendant was recommitted for an indeterminate period to the Department of Mental Hygiene for placement by that agency in a facility of the Department of Corrections equipped to treat sexual psychopathy (Welf. & Inst. Code, § 5518).

Meantime, while the several proceedings just recounted were taking place in the Santa Monica court, the matter assigned to department 41 was on May 23, 1957, marked off calendar; the minutes of department 41 for that day recite that "defendant is committed to Atascadero State Hospital for an indeterminate period in Case No. 185924" (the Santa Monica matter).

On July 6, 1958, it further appears, defendant escaped from Atascadero; he was subsequently apprehended in connection with still another (and third) sex crime. On March 1, 1960, the original department 41 matter and the Santa Monica case were restored to the court's calendar in department 103; both causes were ordered continued to March 8, "to be heard with case No. 222740" (the third sex crime). On March 8, the continued date, the court questioned its jurisdiction to sentence defendant in the department 41 case, since the superintendent at Atascadero had never rendered a report concerning defendant's future care, supervision and treatment in that matter; both causes were again continued to March 22, 1960, in order to obtain "recommendations" from the Atascadero superintendent necessary for proper disposition of the case.

On March 14, 1960, the superintendent at Atascadero addressed a letter to the court (in department 103) with reference to the department 41 case; therein he expressed the opinion that defendant was "a sexual psychopath . . . will not benefit by care or treatment in a state hospital and is a menace to the health and safety of others," and recommended that he be sentenced for the crime which he admittedly had committed. On March 22, 1960, defendant's application for probation was denied and he was sentenced to state's prison for the prescribed term; the Santa Monica matter was placed off calendar for the given reason that "the Court has no jurisdiction."

Defendant now contends that the court was without jurisdiction to resume the criminal proceedings which it . had previously suspended; he specifically complains that following the 90-day commitment the superintendent at Atascadero never submitted to the committing court an opinion as to

whether he was a sexual psychopath or any recommendation concerning his future treatment, and that the court never made an affirmative finding that he was a sexual psychopath nor did it commit him to Atascadero for an indeterminate period. Also assigned as error is the court's refusal to grant him a jury trial on the issue of sexual psychopathy.

The relevant portions of the pertinent legislation are set forth below.[1]

 As far as this particular case is concerned, there is nothing to indicate that within the prescribed 90-day period the superintendent of the hospital reported to the court his

---

[1]Section 5504, Welfare and Institutions Code, provides: "The judge shall appoint not less than two nor more than three psychiatrists, each of whom shall be a holder of a valid and unrevoked physician's and surgeon's certificate who has directed his professional practice primarily to the diagnosis and treatment of mental and nervous disorders for a period of not less than five years, and at least one of whom shall be from the medical staff of a State hospital or county psychopathic hospital, to make a personal examination of the alleged sexual psychopath, directed toward ascertaining whether the person is a sexual psychopath."

Section 5512, Welfare and Institutions Code, provides: ". . . If, after examination and hearing, the judge finds that the person is a sexual psychopath within the meaning of this chapter, he shall make and sign an order that the person be placed temporarily in a suitable psychiatric facility maintained by a county or in a state hospital of the Department of Mental Hygiene designated by the court for observation and diagnosis for a period not to exceed 90 days, with the further provision in said order that the superintendent of the hospital or person in charge of the county facility shall report to the court the diagnosis and recommendations concerning such person within the 90-day period. . . .

"The superintendent of the hospital or person in charge of the county facility shall within 90 days cause the person to be examined and forward to the committing court his opinion as to whether or not the person is a sexual psychopath, whether or not he is a menace to the health and safety of others, and whether or not he will benefit by care and treatment in a state hospital, including therein a report, diagnosis and recommendation concerning the person's future care, supervision and treatment . . .

"If the superintendent of the hospital or person in charge of the county facility reports to the court that the person is a sexual psychopath and that the person could benefit by treatment in a state hospital, the court shall make an order committing the person to the department for placement in a state hospital for an indeterminate period and a copy of such commitment shall be personally served upon said person within five days after the making of such order . . .

"No person shall be committed for an indeterminate period as a sexual psychopath unless an observation placement has been made and reported, diagnosed and recommended upon as provided by this section."

Section 5512.5 Welfare and Institutions Code provides: "Persons committed as sexual psychopaths to the department for placement in a state hospital following an observation placement under this chapter shall have the same rights to jury trial as provided in this code for mentally ill persons." (Under Welfare and Institutions Code, section 5125, a mentally ill person must demand that the question of his illness be tried by a jury.)

diagnosis and recommendations (Welf. & Inst. Code, § 5512), nor does the record reveal that subsequent to the 90-day period any hearing was had or finding made on the issue of sexual psychopathy; there is similarly no showing that defendant was committed to a state hospital ''for an indeterminate period,'' and the same is true with respect to any demand for or waiver of a jury trial. However, the record does disclose, as previously noted, that on May 23, 1957 (subsequent to the 90-day commitment order), the matter was marked off calendar for the reason that ''defendant is committed to Atascadero ... for an indeterminate period ...'' in the Santa Monica case.

The attorney general argues that the court in department 41, on the date last mentioned, was aware of the proceedings had in Santa Monica and that it accordingly determined that no useful purpose could be served by making a similar commitment in the instant matter. Emphasized are the following undisputed facts: Defendant (one person) was charged in two separate cases, at almost the same time, with identical sex crimes; the same doctors in both cases found that he was a sexual psychopath; in both cases he was under observation for the prescribed and almost simultaneous 90-day period. This ''interrelation'' between the two cases, it is therefore urged, requires the conclusion that the proceedings had in the Santa Monica matter be considered as applicable to the one at bar[2]—''substantively, all of the statutory prerequisites to an indeterminate commitment under Section 5512 have been complied with, and appellant has been denied no right which the Legislature intended to accord him under the Sexual Psychopathy Act.'' It is also pointed out that an indeterminate commitment in the department 41 case would have been an idle and meaningless act since defendant was already under such commitment to a state hospital by the Santa Monica court for the exact maladjustment here involved.

To hold that the proceedings had in Santa Monica are applicable to the present matter requires us to conclude that under all the circumstances there was in effect a de facto, if not a de jure, consolidation of the two cases. As stated above, the ''off calendar'' order of May 23, 1957, makes specific

---

[2]Significantly, at the December 10, 1956, session in Santa Monica defendant's counsel requested the court ''to consider the provisions and requirements of the Welfare and Institutions Code requiring the Court to appoint doctors shall be deemed to have been fulfilled by the appointment in Case No. 185553 [the department 41 case]; and that the Court has read and considered the reports on file in said file, which is hereby made a part of this file by reference ...''

reference to the commitment to Atascadero for an indeterminate period in the Santa Monica matter. It is true that judicial notice of the court's own records is usually limited to proceedings in the same case, but it is likewise true that "in some circumstances judicial notice will be taken of proceedings in other cases in the same court *in the interests of justice*" (emphasis added) (*Willson* v. *Security First National Bank*, 21 Cal.2d 705, 711 [134 P.2d 800])—here, of course, the Santa Monica proceedings were "in the same court" because "the superior court in a particular county is a single entity and its division into departments is simply for the convenience and expedition of business." (*People* v. *Yates*, 165 Cal.App.2d 489, 493 [332 P.2d 314].) In *Watson* v. *Los Altos School Dist.*, 149 Cal.App.2d 768 [308 P.2d 872], the court was confronted with the rule precluding it from judicially noticing proceedings in another case and disposed of the problem as follows: "Although it has been held that the courts may not take judicial notice of related prior proceedings in the same case, that rule is not without exceptions. As was said in *City of Los Angeles* v. *Abbott*, 217 Cal. 184, 192 [17 P.2d 993], to refuse to take judicial notice of prior related proceedings when justice requires it 'would be to blink the perceptive sense of courts to a degree not consistent with the increasing need for a more practical and efficient method in the administration of the law . . . The rule precluding the court from taking judicial notice of its judgment in another case is not an inflexible one, and has several exceptions . . . the rule is not based on lack of power but is a rule of expediency, to be applied or refused application as the equities and justice of the cases require' " (p. 772).

 In the case at bar, as in *Watson*, the record demonstrates a full measure of compliance with the statutory procedures under the act in the Santa Monica matter; for the trial court, and for this court, to "blink" those facts[3] would not, in our opinion, be "consistent with the increasing need for a practical and efficient method in the administration of the law." True it has been stated that "the provisions of section 5517 [Welfare and Institutions Code] should be strictly complied with" (*People* v. *Thompson*, 102 Cal.App.2d 183, 187 [227 P.2d 272]) ; unlike the situation in *Thompson*, however, it is not contended that defendant has not been accorded

---

[3]Those facts include defendant's admitted waiver of a jury trial (Welf. & Inst. Code, § 5512.5).

every benefit of assistance and treatment under the act, and the present case is further distinguishable in that the medical superintendent's final report (as filed in department 41) expressly states that defendant "is a sexual psychopath . . . will not benefit by care or treatment in a state hospital and is a menace to the health and safety of others." While based upon the superintendent's examination during the 90-day observation period originally ordered in the department 41 case, actually this final report was also based on his observation (and examination) during the period embraced by the indeterminate commitment in the Santa Monica proceeding, the legal prerequisites to which were fully complied with; hence, there is no merit to defendant's claim that (1) the report was not filed within the 90-day period specified in section 5512 and (2) he had not theretofore been committed for an indeterminate period (Welf. & Inst. Code, § 5517). It is provided by section 5518, Welfare and Institutions Code, that "whenever" a person committed for an indeterminate period has not recovered from his sexual psychopathy and in the opinion of the superintendent is still a menace to the safety of others (Welf. & Inst. Code, § 5517, subd. (c)), "the committing court shall forthwith order the return of the person to said committing court and shall thereafter cause the person to be returned to the court in which the criminal charge was tried to await further action with reference to such criminal charge . . ."; it is further therein provided that the court "shall impose sentence or make such other disposition of the case as the court may deem necessary and proper." The court thus being vested with discretion either to resume sexual psychopathy proceedings or impose sentence to the state's prison (*People* v. *Blume,* 183 Cal.App.2d 474, 480 [7 Cal.Rptr. 16]), such discretion clearly was not abused in the instant case. Defendant appears to be an habitual offender against our child molestation laws; the following from *People* v. *Wells,* 112 Cal.App.2d 672, 675 [246 P.2d 1023], is therefore pertinent: "It is within the discretion of the court to send the defendant to state prison . . . Such discretion is to be exercised in view of the entire history of the case, and is properly committed to the conscience of the trial judge. And if the judge feels that the defendant is still a menace to the health and safety of others, it is his duty to send him to state's prison; to temporize no longer with men who prey upon children."

Defendant makes two additional assignments of error.

First, he complains that the prosecuting attorney misled the court as to the facts of the case, and that he was prejudiced by the court's asserted reliance on such misstatements. An examination of the record does not support this complaint; to the contrary, the trial court withheld any action in the present case until there had been filed such ''papers'' as were necessary to give it jurisdiction. ■■ Second, defendant asserts that he was denied the right to be heard in his own defense because the court did not permit him ''to make clear . . . what was happening.'' At the time of sentencing, defendant was represented by counsel; being thus represented, ''he has no right to be heard by himself.'' (*People* v. *Mattson,* 51 Cal.2d 777, 789 [336 P.2d 937].) The suggestion, in effect, that he was not properly represented is likewise without any factual support.

The judgment is affirmed.

Wood, P. J., and Fourt, J., concurred.