[Crim. No. 11403. Second Dist., Div. Two. Sept. 19, 1966.]

THE PEOPLE, Plaintiff and Respondent, v. GLENN L. BENNETT, Defendant and Appellant.

Arthur Cooper, under appointment by the District Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Harold J. Smotkin, Deputy Attorney General, for Plaintiff and Respondent.

HERNDON, J.—This appeal is taken from the order of the trial court made following a hearing which resulted in a determination that appellant was still a mentally disordered sex offender and recommitted him to the Department of Mental Hygiene for placement in a state institution. (Cf. Welf. & Inst. Code, §§ 5518, 5519.)[1]

By way of assignments of error appellant contends (1) that earlier proceedings in the municipal court which resulted in his conviction of the crime of misdemeanor assault and battery (Pen. Code, § 242) were such as to constitute a denial of due process; (2) that his indefinite commitment to a facility of the Department of Mental Hygiene located at a penal institution after a determination that he would not benefit from further treatment at Atascadero State Hospital constituted cruel and inhuman punishment; and (3) that the hearing resulting in his recommitment was not held in accordance with the applicable sections of the Welfare and Institutions Code.

The order presently under review is appealable as a "special order made after final judgment" in a civil action. (Code Civ. Proc., § 963; *Gross* v. *Superior Court,* 42 Cal.2d 816, 820 [270 P.2d 1025].) Appellant's suggestion that we undertake a review of the criminal proceedings previously conducted in the municipal court and subsequently adjourned following institution of the superior court action to have him declared a mentally disordered sex offender is inappropriate. (Cf. *People* v. *Thurmond,* 154 Cal.App.2d 797, 799 [316 P.2d 721].) If there is any merit in appellant's attack on these criminal proceedings, it may more suitably be developed by a motion for new trial in the criminal action (cf. *Thurmond* v.

---

[1] Unless otherwise noted, all code references are to the Welfare and Institutions Code.

*Superior Court,* 49 Cal.2d 17, 21 [314 P.2d 6])[2] or by an application for a suitable extraordinary writ directed to a trial court since its resolution will require the determination of factual questions entirely beyond the record in the instant appeal and falling within the proper functions of a trial court rather than this appellate tribunal.

Appellant's contentions regarding the unconstitutionality of his confinement presents a question foreclosed in this state by prior judicial determinations and no point would be served by their repetition here. (See *People* v. *Levy,* 151 Cal.App.2d 460, 464 et seq. [311 P.2d 897] for an extended discussion of this question and citations to the leading cases dealing therewith. Also see *People* v. *Rancier,* 240 Cal.App.2d 579, 581 et seq. [49 Cal.Rptr. 876].)

However, we have concluded that there is sufficient merit in appellant's final assignment of error that we must return this matter to the trial court for clarification of the ambiguous and enigmatic record before us. A proper understanding of these procedural questions requires a brief summary of the factual history of the instant case and a review of the cases decided during the course of the piecemeal development of the present legislation dealing with the confinement, care and treatment of the mentally disordered sex offender.

By complaint filed in the municipal court appellant was charged with violations of Penal Code sections 242 (battery), 415 (disturbing the peace), and 653m, subdivision (a) (making annoying, etc. telephone communications) on November 22, 1963. Appellant was released on $250 bail. After his motion for a second continuance had been denied on January 15, 1964, acting in propria persona, he entered a plea of nolo contendere to the battery charge and the other counts were dismissed. The matter was then continued to February 17, 1964, for a probation and sentence hearing. Subsequently the municipal court proceedings were suspended and appellant was transferred to superior court for proceedings to determine whether he was a mentally disordered sex offender within the meaning of chapter 4 of part I of division 6 of the Welfare and Institutions Code. On March 24, 1964, appellant was admitted to the State Hospital at Atascadero for a 90-day examination period and

[2]To the extent that *People* v. *Bales,* 180 Cal.App.2d 16, 17 [4 Cal. Rptr. 205], indicates that no motion for a new trial may be made following a defendant's commitment as a mentally disordered sex offender, it appears to be directly in conflict with our Supreme Court's ruling in *Thurmond.*

was committed thereto for an indefinite period on June 17, 1964. These several orders, of course, are now final.

On January 4, 1965, at appellant's request the court ordered the superintendent of the hospital to file a report pursuant to section 5519. This report[3] indicated that while at first it was thought that appellant had been making satisfactory progress, this opinion recently had been changed. No reason whatsoever was given for this change of opinion. The superintendent stated that in his opinion appellant was still a danger to society but that he had received maximum hospital benefits. He recommended that appellant be committed to other facilities of the Department of Mental Hygiene for an indeterminate period.

The minutes of the court contained in the clerk's transcript filed herein fail to indicate exactly what orders were made following the receipt of this report, but the comments of the court reported on February 16, 1965, refer to appellant's having been recertified to the superior court by the municipal court for further proceedings under sections 5518 and 5519 to determine his present condition as a mentally disordered sex offender who still constituted a menace to the health and safety of others.

In its early form the legislation dealing with mentally dis-

[3] "Diagnosis: Sociopathic personality disturbance, sexual deviation (exhibitionism and forced touching and attention to adult women).

"This patient is staffed because he has filed a writ under Section 5519 of the Welfare and Institutions Code. He is a fifty-year-old, white, divorced male, admitted to this hospital under the provisions of Section 5512 of the Welfare and Institutions Code, charged with violation of Section 242 of the Penal Code, battery. The patient saw a phone number in a restaurant restroom indicating that by calling this number the party would be receptive to having intercourse. After several phone calls he arranged to go to the home. However, his interpretation of the message was not correct. He attempted to force his sexual attentions onto the woman in the house. The husband left, got a gun, returned and shot the patient in the legs.

"It was considered for quite a period of time that the patient was involved in the program and making good progress. More recently it has been decided by his Ward Team that the patient actually has not made any progress and, as a matter of fact, is not any different than he was when he came in.

"This patient has reached maximum hospital benefit. He has had a trial of therapy at this hospital and has continued to be not amenable to treatment in a hospital setting. He remains a danger to society. He should be returned to the criminal court for action.

"I recommend that he be committed to the Department of Mental Hygiene for an indeterminate period and sent to the Reception and Guidance Center, California Institution for Men, Chino, California, in compliance with Section 5512 of the Welfare and Institutions Code (disposition of case other than hospitalization when patient is not amenable

ordered sex offenders, then known as the Sexual Psychopathy Law, did not provide for the indefinite confinement of a mentally disordered sex offender beyond the point where he had received treatment in a hospital facility but had not recovered. (*In re Stone,* 87 Cal.App.2d 777, 781 [197 P.2d 847].)

In the *Stone* case, the defendant had been committed as a sexual psychopath prior to his conviction of the crime of which he was charged, a practice also permitted by the then existing statutes. Thereafter, over a several-year period, the hospital repeatedly returned the defendant to the trial court advising that while he was still a menace to society, he would not benefit from further treatment and that criminal proceedings against him should be resumed. However, in each instance the prosecuting authorities advised the court that by reason of the lapse of time and resulting loss of evidence, they considered a successful prosecution unlikely. The court would then return the defendant to the hospital. The appellate court in *Stone* granted his petition for writ of habeas corpus and ordered him discharged from the hospital.

Following the *Stone* case, the Legislature amended the Sexual Psychopathy Law to provide that proceedings thereunder would not be commenced until an adjudication had been made on the criminal charge. Former section 5502.5 was supplanted by new sections numbered 5517 and 5518[4] providing

---

to hospital treatment); and Section 5518 of the Welfare and Institutions Code (facilities for treatment) which states that the Director of Mental Hygiene and Department of Corrections shall provide units for custodial care and treatment of mentally disordered sex offenders.

"It is requested the Court notify the Sheriff to call for the above-named patient."

[4]At the time of the hearing held herein, sections 5517 and 5518 provided:

(§ 5517) "Whenever a person who is committed for an indeterminate period to the department for placement in a state hospital as a mentally disordered sex offender (a) has been treated to such an extent that in the opinion of the superintendent the person will not benefit by further care and treatment in the hospital and is not a danger to the health and safety of others, or (b) has not recovered, and in the opinion of the superintendent the person is still a danger to the health and safety of others, the superintendent of the hospital shall file with the committing court a certification of his opinion under (a) or (b), as the case may be, including therein a report, diagnosis and recommendation concerning the person's future care, supervision or treatment. If the opinion so certified is under (a) the committing court shall forthwith order the return of the person to said committing court and shall thereafter cause the person to be returned to the court in which the criminal charge was tried to await further action with reference to such criminal charge.

"Such court shall resume the proceedings, upon the return of the person to the court, and after considering all the evidence before it may

for the possibility of indefinite commitments in the event the hospital should determine that the person committed remained a menace to others but was one who would not benefit from further treatment therein.

In substance, section 5517 provided that when, in the opinion of the superintendent of the hospital in which a sexual psychopath had been committed, the person had (a) recovered from his sexual psychopathy, or (b) had been treated to the extent he was no longer a menace to the health and safety of others, or (c) had not recovered and was still a menace to

---

place the person on probation for a period of not less than five years if the criminal charge permits such probation and the person is otherwise eligible for probation. As a condition of such probation the person shall totally abstain from the use of alcoholic liquor or beverages. In any case, where the person is sentenced on a criminal charge, the time the person spent under indeterminate commitment as a mentally disordered sex offender shall be credited in fixing his term of sentence." (Stats. 1963, ch. 1913, p. 3913, § 17.)

(§ 5518) "If the opinion so certified is under subdivision (b) of Section 5517, the committing court shall forthwith order the return of the person to said committing court and shall thereafter cause the person to be returned to the court in which the criminal charge was tried to await further action with reference to such criminal charge.

"Such court shall resume the proceedings and after considering all the evidence before it shall impose sentence or make such other disposition of the case as the court may deem necessary and proper; provided, that said court, if satisfied that the person has not recovered from his mental disorder and is still a danger to the health and safety of others, may recertify the person to the superior court of the county. If said court after hearing makes a finding that the person is still a mentally disordered sex offender and is still a danger to the health and safety of others, it may make an order recommitting the person for an indeterminate period to the Department of Mental Hygiene for placement in a state institution or institutional unit for the care and treatment of such mentally disordered sex offenders designated by the court. At such hearing or hearings, the person shall be entitled to present witnesses in his own behalf, to be represented by counsel and to cross-examine any witnesses who testify against him.

"The Director of Mental Hygiene, with the approval of the Director of Corrections and the Director of Finance, may provide on the grounds of a state institution or institutions under the jurisdiction of the Department of Corrections or the Department of Mental Hygiene one or more institutional units to be used for the custodial care and treatment of mentally disordered sex offenders. Each such unit shall be administered in the manner provided by law for the government of the institution in which such unit is established.

"The court shall cause the person so recommitted to be delivered to the state institution or the institutional unit so designated. The person shall remain therein or in any other such institution or institutional unit to which he may be transferred by the Director of Mental Hygiene until the person is no longer a danger to the health and safety of others. Thereupon the proceedings set forth in Section 5517 shall be followed with respect to the certifying of an opinion to the committing court and the release of the person thereby." (Stats. 1963, ch. 1913, pp. 3913-3914, § 18.)

others, the superintendent would so certify to the committing court.[5] Section 5517 also provided that if the certified opinion was favorable, the person would be returned to await further action with reference to the criminal proceeding.

Section 5518 provided that if the certified opinion was unfavorable, the person might be recommitted for an indeterminate period to the Department of Mental Hygiene for placement in a state institution or institutional unit for the care and treatment of sexual psychopaths.[6]

Sections 5517 and 5518 eliminated the objection to recommitments for indeterminate periods discussed in *Stone* (*People* v. *Gross*, 139 Cal.App.2d 607, 610 [294 P.2d 88]) and their provisions were analyzed and applied in varying factual contexts in a number of appellate court decisions. It was held in *Russell* v. *Superior Court*, 172 Cal.App.2d 60, 62-63 [342 P.2d 389], that if the certification from the hospital was favorable in that it concluded that the person was no longer a menace to others, such determination was conclusive on the issue and terminated the sexual psychopathy proceedings. The superior court could not overrule this determination upon a subsequent hearing by retrying the issue, making a contrary determination and ordering the recommitment of the person. (Cf. *People* v. *Wells*, 112 Cal.App.2d 672, 675 [246 P.2d 1023]; *People* v. *De La Roi*, 185 Cal.App.2d 469, 472 [8 Cal. Rptr. 260]. See also, *People* v. *Bachman*, 130 Cal.App.2d 445, 449-450 [279 P.2d 77], holding that a determination by the hospital after an initial 90-day examination that the person was not a sexual psychopath was binding on the committing court.)

However, as noted in *Russell, supra,* section 5517 requires that the superintendent must include a "report, diagnosis and recommendation" along with his certified "opinion." While the latter is binding on the court, the former may not be. Thus, in *People* v. *Adams,* 194 Cal.App.2d 1, 3-4 [14 Cal.Rptr. 604], the decision notes that in a prior proceeding, the

[5]Originally section 5518 did not provide for the possibility of sentencing a sexual psychopath on the criminal charge if he had not recovered and was still a menace to others. (*People* v. *Thompson,* 102 Cal.App.2d 183, 186-187 [227 P.2d 272].) It was subsequently amended to provide that the person should be returned to the criminal court for either sentencing or recertification to the superior court for possible recommitment.

[6]Subsequent amendments have consolidated subdivisions (a) and (b) into one subdivision (a) and the original subdivision (c) has now become subdivision (b). For purposes of clarity, we will henceforth refer to an opinion under former subdivisions (a) and (b) or present subdivision (a) as a "favorable opinion" and an opinion under former subdivision (c) and present subdivision (b) as an "unfavorable opinion."

superintendent's unfavorable report was accompanied by a recommendation that the defendant be sentenced on the criminal charges. Nonetheless, after a hearing the defendant was recommitted to the Department of Mental Hygiene for an indeterminate period.

However, section 5517 left the decision as to when a report on a committed person should be made entirely up to the superintendent of the hospital and no method other than petitioning for an extraordinary writ was available to a committed person who wished a determination of his present condition. (*People* v. *Albin*, 111 Cal.App.2d 800, 804-806 [245 P.2d 660].)

The Legislature in 1952 enacted section 5519[7] which provided a method whereby the committing court, on its own motion or on motion by or on behalf of the person committed, might require the superintendent of the hospital to forward to it his opinion as under section 5517. Unfortunately, since sections 5519 and 5517 do not mesh, the Legislature, by purpor-

---

[7]At the time of the hearing held herein, section 5519 provided:

"After a person has been committed for an indeterminate period to the department for placement in a state hospital as a mentally disordered sex offender and has been confined for a period of not less than six months from the date of the order of commitment, the committing court may upon its own motion or on motion by or on behalf of the person committed, require the superintendent of the state hospital to which the person was committed to forward to the committing court, within 30 days, his opinion under (a) or (b) of Section 5517, including therein a report, diagnosis and recommendation concerning the person's future care, supervision, or treatment. After receipt of the report, the committing court may order the return of the person to the court for a hearing as to whether the person is still a mentally disordered sex offender within the meaning of this article.

"The hearing shall be conducted substantially in accordance with Sections 5504 to 5511, inclusive. If, after the hearing, the judge finds that the person has not recovered from his mental disorder and is still a danger to the health and safety of others, he shall order the person returned to the Department of Mental Hygiene under the prior order of commitment for an indeterminate period, or, if the opinion of the superintendent of the state hospital was under (b) of Section 5517, he may make and sign an order recommitting the person for an indeterminate period to the Department of Mental Hygiene for placement in a state institution or institutional unit for the care and treatment of such mentally disordered sex offenders designated by the court and provided pursuant to Section 5518. A subsequent hearing may not be held under this section until the person has been confined for an additional period of six months from the date of his return to the department. If the court finds that the person has recovered from his mental disorder to such an extent that he is no longer a danger to the health and safety of others, or that he will not benefit by further care and treatment in the hospital and is not a danger to the health and safety of others, the committing court shall thereafter cause the person to be returned to the court in which the criminal charge was tried to await further action with reference to such criminal charge."

tedly joining them, created a pragmatic paradox that to date has not been expressly analyzed by any appellate court decision to which our attention has been directed or which has been disclosed by our independent review of the cases on the subject.

That is to say, if literally applied, each time a court requested a report on a patient under section 5519, the necessary result would be the patient's removal from the hospital and a termination of his treatment. This is true because section 5517 provides for only two types of reports, i.e., a favorable subdivision (a) report that the person "has been treated to such an extent . . . [he] will not benefit by further care and treatment in the hospital and *is not a danger to the health and safety of others*" or an unfavorable subdivision (b) report that the person "has not recovered . . . and [he] *is still a danger to the health and safety of others.*" If the report is a favorable one under subdivision (a), then section 5517 provides that the mentally disordered sex offender proceedings must be terminated and the person *must be returned to court* where his criminal proceedings are to be reinstituted. Similarly, if the report is an unfavorable one under subdivision (b), then section 5518 provides that the person *must be returned to the court* and either sentenced on the criminal charge or recommitted to a different facility of the Department of Mental Hygiene. We cannot believe that the Legislature, in providing a patient a means to inquire into his condition following a period of treatment, ever intended that such inquiry should automatically cause the person's hospital treatment to be terminated, thereby frustrating the whole program for aiding mentally disordered sex offenders.

Initially, it may be noted that prior to the enactment of section 5519 the opinion, with accompanying report, diagnosis and recommendation, contemplated by section 5517, and its predecessor section 5502.5, necessarily would be the result of the voluntary determination by the superintendent of the hospital that by reason of treatment rendered a committed person his condition had become sufficiently stabilized that he should be removed from that facility. That is, he had either recovered sufficiently that he no longer constituted a menace to others and therefore the psychopathy proceedings should be terminated or he had received the maximum benefits of treatment in the hospital but still remained a menace to others and therefore should be sentenced in the criminal proceeding or transferred to another facility operated by the Department of

Mental Hygiene for the care and treatment of sexual psychopaths.

This result is inherent in section 5517 even though subdivision (b) (former subd. (c)) does not expressly so state. That is, condition (b) is merely described as one wherein the person "has not recovered and in the opinion of the superintendent the person is still a danger to the health and safety of others." The further fact that the person's condition is such that he would not benefit from further treatment is not expressly made a necessary part of such opinion. That it necessarily is regarded as included therein, however, is clear from the fact that section 5518 provides that when such a report is received by the court, it "shall forthwith order the return of the person" to await further proceedings. There would be no reason for such return if the opinion of the superintendent is that the person still remains a menace to others but is responding to treatment in such fashion as to make it desirable that he remain in the hospital facilities. Of course, there also would be no reason for the superintendent voluntarily to file a report if he thought it desirable that the person remain under treatment at the hospital, for in such case he would merely retain him there without filing a report of any kind.

However, the type of "progress" report envisioned by section 5519 would often be of this very variety never contemplated or utilized under voluntary section 5517 reports, i.e., a report indicating that the person is still a menace to others but one who has not received the maximum benefits from treatment at the hospital and whose commitment therein should continue. ■ Therefore, the decisions have properly held, although without express discussion, that a report compelled under section 5519, even though unfavorable and meeting the limited express definitions of section 5517, does not automatically require the return of the person for the proceedings made mandatory by section 5518 in the event of a voluntary section 5517 report. (*People* v. *Barzee,* 213 Cal.App.2d 139, 140-141 [28 Cal.Rptr. 692].)

Such a practical and common sense construction of these interlocked sections was obviously necessary for, as we have indicated, otherwise every unfavorable section 5517 report filed in compliance with a section 5519 order would require the person's removal from the hospital under section 5518 even though it was the further opinion of the superintendent that he was benefiting from treatment there and should remain

therein. It would also appear clear that the hearing authorized by section 5519 was designed to meet the needs of just such a situation.

■ That is to say, although the regrettably loose language used in section 5519 might appear to provide to the contrary, it seems clear that if a superintendent's report produced in response to a section 5519 demand is favorable, in that it expressed the superintendent's opinion to be that the person was no longer a danger to others, the court should not be permitted to hold a hearing for the purpose of reaching a contrary determination. It was so held in *Russell* v. *Superior Court, supra,* 172 Cal.App.2d 60, 62-63, although apparently in that case the favorable section 5517 report had been voluntarily initiated and filed by the superintendent prior to the commencement of the subsequent hearing conducted by the court purportedly under the authority of section 5519.

■ However, regardless of the manner in which the superintendent's attention is directed to the person's condition after a period of treatment, if this officer, whom the Legislature has designated as the final arbiter on the question, has expressed his opinion that the person no longer constitutes a menace to the health and safety of others, such opinion is binding on the courts. (Cf. also, *People* v. *Bachman, supra,* 130 Cal.App.2d 445, 449-450, in which it was held that if, after a 90-day examination period, the superintendent reports that the defendant is not a sexual psychopath, the court has no authority to conduct a further hearing resulting in a contrary determination.)

Similarly, it seems highly improbable that the Legislature intended by section 5519 to authorize the courts to conduct a hearing thereunder and to return a person to the hospital if the superintendent's report supplied in response to a section 5519 request is unfavorable but indicates his belief that the person has received maximum benefit from treatment therein. ■ Therefore, it appears clear that the hearing contemplated by section 5519 will usually occur only when the superintendent's report is unfavorable, in that it expresses his opinion to be that the person still remains a danger to others, but recommends that he should remain in the hospital for further treatment. The granting of the hearing in such instances, of course, is discretionary with the court. (*People* v. *Barzee, supra,* 213 Cal.App.2d 139, 140-141; *People* v. *Hymes,* 161 Cal.App.2d 668, 671 [327 P.2d 219].)

A more difficult problem is presented when section 5519 is

used to obtain the superintendent's report and opinion and when received such opinion is not only unfavorable but also expresses his belief that the person has received maximum benefit from treatment therein and should either be sentenced on his criminal charge or be transferred to other facilities. It has been held that where the superintendent's unfavorable report recommended sentencing on the criminal charge, the granting of a section 5519 hearing was discretionary, i.e., the court could deny such a hearing and treat the superintendent's opinion as if it had been voluntarily filed and conduct further proceedings under section 5518 which does not require a further hearing on the issue of the person's then condition as a mentally disordered sex offender unless the court in which the criminal charges are pending should determine not to follow the superintendent's recommendation as to sentencing but instead should recertify the person to the superior court. (*People* v. *Blume*, 183 Cal.App.2d 474, 480-481 [7 Cal.Rptr. 16].)

However, so far as we have been able to determine, no appellate court has passed upon the question whether an unfavorable report filed in response to a section 5519 demand, which recommends a recommitment for an indefinite period to other facilities, entitles the person seeking a redetermination of his condition to a section 5519 hearing or whether he is to be accorded only the more limited hearing authorized by section 5518.

Section 5518 provides for an initial hearing to be conducted by the criminal court to which the person has been returned and then, if that court determines that the person has not recovered and is still a danger to others and recertifies him to the superior court, a further hearing shall be held in the superior court to determine if in its judgment the person has not recovered, in which case it may recommit the person to the Department of Mental Hygiene for placement in a state institution. Section 5518 provides that ''At such hearing or hearings, the person shall be entitled to present witnesses in his own behalf, to be represented by counsel and to cross-examine any witnesses who testify against him.''

Section 5519 provides that ''The hearing shall be conducted substantially in accordance with Sections 5504 to 5511, inclusive.'' The most important difference in the two proceedings is that under section 5504, the court would be required to appoint not less than two nor more than three psychiatrists, with specified qualifications, who would make a personal

examination of the person. These psychiatrists would then attend the hearing and hear the testimony of all witnesses (section 5505) and may be called to testify and subjected to cross-examination (section 5506).

■ It is to be noted that neither section 5518 nor section 5519 indicates whether the report of the superintendent may be received as "additional evidence" and certainly nothing in section 5519 would tend to indicate that such report could be received in lieu of the testimony of court-appointed psychiatrists. Section 5512 provides for the introduction of such report if a person demands a hearing within 10 days after the completion of an initial 90-day examination period which results in the recommendation that the person should be committed to the hospital. However, the situation there presented is substantially different from that presently under consideration.

In a section 5512 hearing, the examination by the court-appointed psychiatrists would have been made only a short time before this hearing and presumably would tend to be consistent with the hospital's report. If they were inconsistent, of course, the psychiatrists would be readily available to the defendant as witnesses in his behalf. ■ However, in a section 5519 hearing, the person would ordinarily be disputing the hospital's conclusion as to his condition following perhaps years of treatment therein. Not to appoint other psychiatrists to reexamine the person would tend to leave him almost entirely without defense unless he were able to afford the cost of obtaining private psychiatric examinations and resultant expert testimony.

In the instant case the reporter's transcript reveals that at appellant's first appearance in the superior court, following his recertification thereto from the municipal court, his counsel requested the appointment of two psychiatrists to examine him. The court stated: "I don't believe under Section 5519 it is provided." The deputy district attorney seconded this view and further contended that appellant was entitled only to a hearing under section 5518, wherein, he asserted, appellant would have the burden of proving that he is not a mentally disordered sex offender and that the report of the superintendent of the hospital alone would constitute sufficient evidence to establish his condition. The transcript then continues:

"THE COURT: He was remanded back to the Municipal Court and Section 5518 and 5519 of the Welfare and Institutions Code specifically provides one of two things. Either impose the

sentence or certify him back to this court in accordance with the report of the superintendent, and upon his recertification back to court if it is under Section (b) of Section 5517 *then the Court here, in reliance on the report from the superintendent, merely makes an order for an indeterminate period to the Department of Mental Hygiene.* So it is not incumbent at all to appoint two additional doctors to report at this time. I am agreeable to a continuance but I don't think *I can* go along with the request to appoint two doctors *because I don't believe it is provided for under the Code.* Now if you want to have him examined I believe that is his privilege.'' (Italics added.)

A continuance was granted and appellant was examined by one private psychiatrist who subsequently filed a favorable report. In addition, at the hearing held following the continuance, the court questioned a psychiatrist who had examined appellant prior to his initial commitment and who happened to be in the courtroom at that time. This doctor testified that he originally had concluded appellant was not a mentally disordered sex offender. He stated that he had not had available a record of appellant's offense at the time of his original examination, and while he could understand the conclusion reached by the superintendent of the hospital, ''However, it is my feeling that with the further information and with his future plans to possibly remarry his wife that a great deal of this stress will be taken away. . . . That wouldn't solve his basic problem. He certainly needs follow up treatment but it would take the stresses and strains off of him during the times of his sexual need, and along with therapy this is something that may be given a trial.''

The court, however, declined to follow these recommendations stating: ''Well, the Court seriously considered this and I feel under the circumstances that the Court has to place *the greatest reliance* on the opinion of the Superintendent of the hospital and, accordingly, I am going to order him recommitted for an indeterminate period to the Department of Mental Hygiene for placement in a state institution. . . .'' (Italics added.)

It may be conceded that appellant did not fully avail himself of the rights afforded him even by section 5518. That is, if, as he implies, the negative report of the superintendent was occasioned by reason of his filing a request for redetermination of his condition under section 5519, he did not attempt to establish this fact by subpoenaing the superintendent or

any member of the hospital's staff.[8] (Cf. § 5510; *People* v. *Browning*, 224 Cal.App.2d 35, 37 [36 Cal.Rptr. 174].) Similarly, by augmenting the record on this appeal, appellant has presented to us a letter written after the hearing held herein by a clinical psychologist at the hospital who claimed that appellant had been her patient while at the hospital. Her report on his activities and his progress was diametrically opposed to the conclusion reached by the superintendent.[9] No reason is given why this information was not obtained prior to the hearing or why this psychologist had not been called as a witness on appellant's behalf. (Cf. *People* v. *Bachman, supra*, 130 Cal.App.2d 445, 447, where the court received evidence from a hospital doctor that was in conflict with the superintendent's opinion.)

However, despite these shortcomings in appellant's presentation of his case in the hearing that was allowed him, we feel that the court erred in concluding it could not appoint two independent psychiatrists to examine appellant because it was not "provided for under the Code." When a person seeks

---

[8]In his initial application for a section 5519 report and hearing, appellant had indicated that he was reluctant to seek court intervention but stated that he felt he was required to do so because he found himself caught in the middle of an internecine struggle in the hospital between his ward doctor and his psychologist concerning the proper methods to be used in treating their patients. He also expressed his prophetically accurate fear that by even seeking a hearing to determine if he had recovered, as his psychologist believed, his ward doctor would cause an unfavorable report to be made which would result in his indefinite commitment in a penal facility.

[9] "San Luis Obispo, March 21, 1965.

"Mr. S. R. Smith, Counselor
Reception Guidance Center
Box 441
Chino, California

"Dear Mr. Smith:

"The wife of a former patient of mine requested this letter to you regarding her husband Mr. Bennett.

"During the greater part of his stay at Atascadero State Hospital Mr. Bennett has been one of my patients. He was all the time very well motivated to work on his problems. Mr. Bennett never missed a therapy session and was always on time for his appointments. He participated in the group discussions making valuable contributions.

"His influence upon other patients, especially the younger ones was always beneficial. All his interpersonal relationships were very good. When he left the hospital, I, as his therapist felt Mr. Bennett was sincere and determined in his wish to be no more a menace to society. Mr. Bennett's continuous efforts in order to make a better adjustment in the hospital impressed me very favorably.

"I do hope that this information will be useful. In case I could be of further help regarding Mr. Bennett please do not hesitate to call on me.

"Sincerely,

"Margaret Noszlopi, Ph.D.

"Clinical Psychologist."

a redetermination of his condition under section 5519 and a hearing is held following an unfavorable report, the court is certainly authorized to appoint psychiatrists to reexamine him. ▇▇▇ In fact, if the hearing is granted under section 5519, it is mandatory that such doctors be appointed. As stated in *People* v. *Martinez,* 130 Cal.App.2d 239, 243 [278 P.2d 727]:

"It appears from the order here entered that the motion of the appellant, as made, for a hearing under the sections here involved, was unqualifiedly granted and that it was ordered that he be returned for such hearing 'upon order.' Apparently defendant was not present and no witnesses were sworn or examined, and petitioner had no counsel representing him at such hearing, if there was one. Therefore, the order of the court *recommitting* him *has no evidentiary support other than the diagnosis and recommendation of the hospital staff.*

"Section 5519, *supra,* provides that when such a hearing has been ordered that it shall be conducted substantially in accordance with sections 5504 and 5511, inclusive, . . ." (Italics added in part.) (Cf. also, *People* v. *Gross, supra,* 139 Cal.App.2d 607, 609; *People* v. *Gross,* 115 Cal.App.2d 502, 504 [252 P.2d 416].)

In the instant case the minute orders fail to disclose whether or not the court in the exercise of its discretion had denied appellant a section 5519 hearing and was proceeding as if the matter had been initiated by the superintendent of the hospital voluntarily filing an unfavorable section 5517 report thereby bringing the matter on for hearing under section 5518. The reporter's transcript reveals that the court ambiguously referred to both sections as the basis for the hearing granted appellant. At the time of the first hearing, the following comment was recorded: "THE COURT: He was remanded back to the Municipal Court and Section 5518 and 5519 of the Welfare and Institutions Code specifically provides. . . ." The second hearing date commences with the following: "THE COURT: This matter has been recertified back to this court under Section 5519 of the Welfare and Institutions Code by Division 20 of the Municipal Court."

While we feel that *in any hearing* conducted by the committing court after a person has sought a redetermination of his condition, and particularly when the report ordered under section 5519 is unfavorable and recommends indefinite commitment to another facility, it would certainly be preferable to accord the person the full advantages provided for by section

5519 to the extent that they exceed those required by section 5518, nevertheless in the instant case we need not base our decision on this consideration alone. ▮ Here the record, although ambiguous, appears to indicate that the hearing was held under section 5519 in which case the requirements thereof must be met. Further, even if the court's actions might be so construed as to indicate that he was proceeding under section 5518 only, nevertheless his comments demonstrating his belief that he lacked the *power* to appoint independent psychiatrists was erroneous and requires a reversal of the order made herein.

It is true that at one point during the second hearing the court made the following statement: "Counsel, both the report of Dr. Tweed and the report of Dr. Skrdla does raise some conflict in the Court's mind in balancing it and weighing it against the report from Atascadero from the Superintendent, but I don't feel further medical examination would be of much more help here." However, this remark was made after appellant's counsel had commented upon appellant's heart condition and the effect of medication given him therefor. In addition, the court thereafter examined at considerable length the psychiatrist who happened to be in the courtroom although he had not had an opportunity to reexamine appellant for that purpose. In view of the considerable doubt and difficulty expressed by the trial court in its obviously sincere and commendable efforts to reach a proper determination herein, it is impossible for us to hold that the court's decision probably would have been the same if he had had the benefit of the testimony of two independent psychiatrists who had reexamined appellant and concluded, as had his private doctor, that he was no longer a danger to the health and safety of others. (Cal. Const., art. VI, § 4½.)

▮ Although a mentally disordered sex offender who has committed a misdemeanor may constitutionally be confined indefinitely in facilities located in a prison after a determination that he will not benefit from further hospital treatment (*People* v. *Levy, supra,* 151 Cal.App.2d 460, 464, et seq.), nevertheless the proceedings leading to such a drastic form of confinement should be conducted with the utmost care and all reasonable doubts concerning the rights available to a person to guard against an erroneous determination should be resolved in his favor.

The order under review is reversed.

Roth, P. J., and Fleming, J., concurred.